DANIEL BECK, Respondent, *v.* ELMIRA CARTER et al., Executors, etc., Appellants.

If the owner of land make an excavation thereon adjacent to a highway, or so near as to make the use of the highway unsafe or dangerous, he will be liable to a traveler who, while using ordinary care, falls into it and is injured.

So, also, where the owner of land expressly or by implication invites others to come upon his land, if he permits any thing in the nature of a snare to exist thereon, which results in injury to one availing himself of the invitation, and who at the time is exercising ordinary care, such owner is answerable for the consequences. If, however, he gives but a bare permission to cross the premises, the licensee takes the risk of accidents in using the premises in the condition in which they are.

Defendant's testator, C., the owner of certain premises in the village of B., used for hotel purposes, fronting upon a street and bounded on the side by a public thoroughfare or alley, had for a long period allowed a portion of his premises adjoining the street and alley to be used by the public as a public place and as a portion of the highway.

| 68 | 283 |
| 108 | 216 |

| 68 | 283 |
| 111 | 328 |
| 111 | 329 |

| 68 | 283 |
| 113 | 393 |

| 68 | 283 |
| 115 | 60 |
| 115 | 227 |
| 115 | 246 |

| 68 | 283 |
| 118 | 578 |
| 118 | 579 |
| 119 | 225 |

| 68 | 283 |
| 122 | 127 |
| 122 | 544 |

| 68 | 283 |
| 132 | 502 |

The boundary line of the alley was in no way marked out or defined. C. subsequently erected a building upon such portion of his premises and made an excavation by the side thereof and about ten feet from the line of the alley. The public continued to travel over the space between the building and the alley. Plaintiff passing over the same on a dark night, fell into the excavation and was injured. Prior to the accident the excavation had been covered with boards, which had been removed at that time. *Held,* that the circumstances imposed a duty upon defendant to protect the excavation, and for a neglect of this duty he was properly made liable.

Also, *held,* that it was immaterial whether the alley had been accepted by the public so as to make it for all purposes a highway.

*Blithe* v. *Topham* (Cro. Jac., 158); *Hardcastle* v. *S. Y. R. R. Co.* (4 N. & H., 67); *Bink* v. *S. Y. R. R. Co.* (113 Eng. C. L., 242) distinguished.

(Argued January 16, 1877; decided January 30, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department in favor of plaintiff, entered upon an order reversing an order of Special Term granting a new trial and directing judgment on a verdict. (Reported below, 6 Hun, 604.)

This action was brought to recover damages for injuries alleged to have been sustained by plaintiff by falling into an excavation made by defendant's testator, Joseph Carter, who was the original defendant, on his land situated in the village of Bath.

Said Carter was the owner of a lot of land on the northeast corner of Buell street and Exchange alley or street in the village of Bath. Exchange alley extended from Steuben street on the south to Buell street at its northern termination, and was fifteen feet wide where it started from Steuben street and continued of that width for a short distance when it was made seven and a-half feet wider on each side, and continued to be thirty feet wide to Buell street. Exchange alley was laid out by the owners of land adjoining it when such land was divided into lots, and had been in use by the public for twenty years. But there was no evidence it had ever been adopted or recognized as a street by the public authorities. The premises now owned by defendant had been occupied for many years. First by a building known as Congress hall,

which did not extend west quite to Exchange alley. It was burned down about 1854, and about 1856 another building was erected known as the United States hotel, the west end of which extended further west than Congress hall extended. Buell street was narrow, and for the convenient use of the United States hotel it was set back forty or fifty feet from Buell street, and this vacant space between the street and the hotel was used as a public place and as part of the street and was familiarly called Exchange place.

The United States hotel was burned in 1868, and the cellar which had been under it remained open until May, 1872, when Mr. Carter commenced to excavate a cellar preparatory to erecting a building on the premises. This cellar was located further north towards Buell street than the United States hotel. The west end of it was from five to seven feet further east than the west end of the cellar of the United States hotel, and the south and west part of the United States cellar was filled in by the defendant with earth taken by him from the cellar he excavated. There was a discrepancy in the evidence as to the true location of the east line of Exchange street in reference to the west line of the defendant's block; it was from seven to twelve feet distant. Carter, in constructing his building, excavated on the west end two areas, intended for lights for cellar windows, which were some two feet wide and deep, and three or four long north and south, and were stoned up. The plaintiff was accustomed daily to pass through Exchange alley to and from his meals. On the evening of the 3d of November, 1872, he started from his shop for his boarding-house at about eight o'clock, through said alley; the night was dark. When he came opposite defendant's building an omnibus came out of Buell street into Exchange street, and the plaintiff stepped rapidly to the right, stumbled and fell into one of the area ways referred to and sustained injury. At the time there was on the opposite side of Exchange street a pile of dirt and stones extending into the street so that it was difficult to pass on that side of the street.

At the close of the evidence the defendant's counsel moved for a nonsuit upon the ground, among others, that the defendant was not chargeable with negligence, because the proofs showed the excavation was not in the highway, nor immediately adjoining it, nor in such proximity to it as to charge defendant with the duty of protecting it. That Exchange alley had not been proved to be a legal highway.

The court denied the motion, and an exception was taken.

Before the jury was charged, the defendant's counsel, amongst other things, asked the court to charge:

" That it was the duty of the plaintiff, in using the alley, to know where the lines of it were; and the defendant was not liable unless the hole was so near the highway that a person slipping would fall into it.

" Also, that the hole in question was not a public nuisance, and the plaintiff could not recover unless it was."

The court refused so to charge, and the defendant excepted.

The court charged the jury, among other things, as follows: " That Exchange street was a public thoroughfare," and proceeded:

" They (the public) were entitled to use it as it was included within the boundaries which were apparent from time to time in the exercise of ordinary care and prudence on their own part. The question, whether the precise locus of the injury was within the bounds of the thoroughfare or within the bounds of defendant's lot, is not material except so far as it bears on the question of the negligence of the defendant in leaving the area way open." Again he charged:

"A person passing through an alley of that width cannot be required, and is not to be expected to know where the lines are. If he exercises ordinary prudence to keep within the lines as marked by ostensible boundaries, that is all that can be required of him. He may take the ostensible boundaries, and the reasonable indications where those boundaries are." " I charge you that the plaintiff was not bound to know where the legal east line of the alley was."·

The defendant excepted to these portions of the charge.

The court further charged the jury: "That a person is liable for an accident caused by an excavation upon his own lands situated so near the highway that a person, lawfully using the highway, and exercising ordinary caution falls into. That the excavation was a nuisance if it was made in the highway, or so near it that a person exercising ordinary care was liable to fall into it, and defendant was liable for having it there unless it was protected. That it made no sort of difference whether the excavation was seven, or nine or ten feet from the bounds of the originally established lines of the thoroughfare; if it was so situated that a person lawfully using the thorougfare was liable to fall into it, the defendant was liable."

The defendant excepted to that portion of the above charge, that it made no difference that the excavation was from seven to ten feet from the bounds of the alley.

*Geo. B. Bradley* for the appellants. The excavation on the testator's premises was not a public nuisance and defendants were not liable for any injury arising therefrom. (*Hardcastle* v. *S. Y. R. Co.*, 4 H. & N., 67; *Hounsel* v. *Smith*, 97 E. C. L., 731; *Nicholson* v. *E. R. Co.*, 41 N. Y., 531; *Howland* v. *Vincent*, 10 Metc., 371; *Hadley* v. *Taylor*, 1 L. R., C. P., 54; S. & R. on Neg., § 359; *Jordan* v. *Humiston*, 8 M. & W., 782–788; *Harlow* v. *Humiston*, 6 Cow., 189.) Defendants' testator was not bound to run a fence along the alley. (*Stafford* v. *Ingerson*, 3 Hill, 38; *Wells* v. *Howell*, 19 J. R., 385; *Chapman* v. *Cook*, 14 Am. [10 R. I.], 686; *Sykes* v. *Paulet*, 43 Vt., 443; 3 Black. Com., 209.) The court erred in charging that defendants' testator was charged with liability as for negligence without regard to the location of the area in reference to the alley. (*Butterfield* v. *Forrester*, 11 East, 60; *Button* v. *H. R. R. R. Co.*, 18 N. Y., 251.) Any one passing over the testator's premises did so at his own peril. (*Hounsel* v. *Smith*, 97 E. C. L., 731; *Nicholson* v. *Erie R. Co.*, 41 N. Y., 531.) The alley in question was not a public highway. (*City of Oswego* v. *Oswego Canal Co.*, 2 Seld., 257; *Willoughby* v. *Jenks*, 20 Wend., 86.)

*A. P. Ferris* for the respondent. The charge that the location of the area made no difference if it was so situated that one lawfully and reasonably using the alley was liable to fall into it was erroneous. (*Binks* v. *S. Y. R. Co.*, 113 E. C. L., 242; *Hadley* v. *Taylor*, L. R.. 1 C. P., 54; *Barnes* v. *Ward*, 67, E. C. L., 392; S. & R. on Neg., § 505; *Stratton* v. *Staples*, 59 Me., 94; *City of Norwich* v. *Breed*, 30 Conn., 535.) Plaintiff having been licensed by defendants' testator to pass over his premises, the latter was liable for uncovering the area. (Wood on Mis., §§ 289, 289; *Corley* v. *Hill*, 93 E. C. L., 554; *Driscoll* v. *N. and R. L. and C. Co.*, 37 N. Y., 637; *Swords* v. *Edgar*, 59 id., 28; *Clancy* v. *Byrne*, 56 id., 129; *Cleveland* v. *Cleveland*, 12 Wend., 172.)

ANDREWS, J. The jury have found that there was no negligence on the part of the plaintiff, and this finding is justified by the evidence. The night was dark, and there was no visible boundary to the alley on the east side, opposite the defendant's lot. As the plaintiff came near Buel street he stepped to the east to avoid an approaching omnibus, and fell into the excavation. But the fact that the plaintiff was free from negligence does not alone furnish any ground for a recovery against the defendant. It must also appear that the circumstances created a duty on the defendant to fence or otherwise guard the excavation for the protection of persons in the situation of the plaintiff. It must be assumed in view of the charge and the exceptions that the excavation was on the defendant's lot, at a distance of ten or more feet east of the original east line of Exchange alley. The excavation was made in the course of the construction, by the defendant, of a building on his premises, to admit light and air to the cellar, and was eventually to be covered by an iron grating, and prior to the time of the accident it had been covered with boards, which, however, had been removed before the accident happened. It is manifest that if the plaintiff had kept within the original bounds of the alley he could not have fallen into the excavation. It was because he strayed and deviated

therefrom, and went upon the defendant's lot, that he was injured. But it cannot be held upon the evidence that the plaintiff was a trespasser in going there. There was, it is true, no public easement or right of way over the defendant's lot. It was his private property, and he had the right to its exclusive possession. He could have inclosed it and excluded the plaintiff and all other persons from going upon and passing over it. But from the time the "United States" hotel building was erected in 1856, until it was burned in 1868, the public had been permitted to pass over the vacant part of the lot fronting on Buell street and the alley, without objection. In going from Buell street to the alley, and from the alley to Buell street, this part of the defendant's lot, fifty feet back from Buell street, was traversed by foot passengers, and was used as a part of the streets. There was no intent to permanently dedicate the lot or any part of it as a public place or highway, but the front of the lot was known as Exchange Place, and the public used it, and the defendant and his grantors, by their silence, assented to its use. This use was not occasional or infrequent. The lot was in the business portion of a populous village, and near to public places where the inhabitants had frequent occasion to go. The same use was permitted and continued after 1868 until it was prevented in part by the erection of the defendant's building on a portion of the theretofore vacant space. The public still continued to pass over the lot on the west side of the building after the walls were up, to a point within two or three feet therefrom. There was never any revocation of the license, or permission to the public to use the lot as they had been accustomed, except as the building operated to exclude the public from the space it occupied.

The owner of land is not bound by the common law to fence his land, or in any way to mark the boundaries of his possession. (*Wells* v. *Howell*, 19 J. R., 385; *Stafford* v. *Ingersol*, 3 Hill, 38.) He may leave it open, and a person entering thereon without permission is a trespasser, and it is no excuse that the entry was made innocently and by mistake, and the rule is

the same in respect to a traveler·on the highway who, without necessity, goes therefrom on to the adjoining land. The owner of land may also make an excavation on his own premises, and is not bound to fence it for the protection of persons not lawfully on the land.

This is the general rule, and rests upon the right of the owner to use his property as he pleases, and in the absence of special circumstances if a person traveling on a highway deviates therefrom and falls into a pit or excavation on the adjacent land the owner is not responsible for the resulting injury. One of the earliest cases on this subject is *Blithe* v. *Topham* (Cro. Jac. 158), where it is said that if A, being seized of a waste adjoining a highway, digs a pit in the waste within thirty-six feet of the way, and the mare of B escapes into the waste, and falls into the pit, and is killed, yet B shall not have an action against A, because the making of the pit in the waste and not in the highway, was no wrong to B, but it was by default of B himself that his mare escaped into the waste. In that case, as was said by GIBBS, C. J., in *Deane* v. *Clayton* (7 Taunt., 532), "the defendant was held not to be amenable for the damage done to the plaintiff's mare, because the mare had no right to be on the land where the pit into which she fell was dug."

The cases of *Hardcastle* v. *The South Yorkshire Railroad Company* (4 H. &. N., 67) and *Binks* v. *The same company* (113 Eng. C. L., 242), were decided upon the same principle. In the former the plaintiff's intestate started in the evening to walk from Rotherham to Sheffield upon an ancient footway, and instead of following a turn in the way, by mistake and without negligence on his part, as the jury found, missed the path, and proceeded in a straight direction about twenty feet, to a reservoir constructed by the defendants' predecessors about twenty-four years before, which was left unguarded, and fell in and was drowned. The court set aside the verdict for the plaintiff. POLLOCK, C. B., in delivering the opinion of the court, after referring to the case of *Barnes* v. *Ward* (9 C. B., 392), where the defendants, who had excavated an area

adjoining a public way, and left it unprotected, were held liable for an injury to a person who, in passing along the way, fell into it, said, "When an excavation is made adjoining a public way, so that a person walking upon it might, by making a false step, or being affected by giddiness, or, in the case of a horse or carriage way, might, by the sudden stumbling of a horse, be thrown into the excavation, it is reasonable that the person making such excavation should be liable for the consequences ; but when the excavation is made at some distance from the way, and the person falling into it would be a trespasser upon the defendant's land before he reached it, the case seems to us to be different," and he adds : "We think the true test of legal liability is whether the excavation be substantially adjoining the way." The case of *Binks* v. *The South Yorkshire Railroad Company* was in many respects similar to the one just referred to. The deceased fell into a canal twenty-two feet or thereabouts from the footway, which was unprotected, and was drowned. The case was decided upon the authority of the case of Hardcastle.

It is upon these authorities that the defendant's counsel mainly rely for the reversal of the judgment. But we think they so far differ in their circumstances from the case before us as not to require the same judgment. It is to be observed that the rule laid down in *Blithe* v. *Topham* has been qualified by subsequent cases which hold that if the excavation is adjacent to the highway, or so near thereto as to make the use of the highway unsafe or dangerous, the person making it will be answerable to a traveler, who while using ordinary care, falls into it and is injured, although the excavation is wholly on the land of the defendant. This question was greatly considered in *Barnes* v. *Ward*, and the doctrine of *Blithe* v. *Topham* was thus limited. In *Barnes* v. *Ward* the way was separated from the area into which the plaintiff fell by a curb-stone. The Hardcastle case recognized the authority of *Barnes* v. *Ward*, and in *Hadley* v. *Taylor* (L. R., 1 C. P., 53), the court sustained a verdict for the plaintiff, who, while passing along a highway, fell into a "hoist-hole," on the defendant's premises, fourteen inches

from the side of the highway. BYLES, J., after referring to *Barnes* v. *Ward*, remarked: "It is extremely difficult to draw the line between what is and what is not such a proximity to the highway as to constitute an actionable nuisance."

There is another distinction which, we think, has an application in this case. When the owner of land expressly, or by implication, invites a person to come upon his land, he cannot permit any thing in the nature of a snare to exist thereon, which results in injury to the person who avails himself of the invitation, and who, at the time, is exercising ordinary care without being answerable for the consequences. If, however, he gives but a bare license or permission to cross his premises, the licensee takes the risk of accidents in using the premises in the condition in which they are. The cases of *Corby* v. *Hill* (4 C. B. [N. S.], 556), and *Hounsell* v. *Smyth* (7 C. B. [N. S.], 730), illustrate this distinction. In *Corby* v. *Hill*, the owner of land, upon which was a private road leading to an asylum on his premises for the use of persons going there, gave permission to a third person to place materials on the road. The servant of the plaintiff, in the night time, while driving his master's horse over this road on his way to the asylum, and using due care, ran upon and against the materials placed in the way by the defendant's permission, and the horse was injured. The defendant was held to be liable, and COCKBURN, C. J., said: "The proprietors of the soil held out an allurement whereby the plaintiff was induced to come upon the place in question; they held out this road to all persons having occasion to proceed to the asylum as the means of access thereto. Could they have justified the placing an obstruction across the way whereby an injury was occasioned to one using the way by their invitation? Clearly they could not." In *Hounsell* v. *Smyth*, the defendant was seized of certain waste land, upon which was an uninclosed quarry near to and between two public highways, and the declaration averred that all persons having occasion to pass over the waste land had been accustomed to go across the same with the license and permission of the owners, and that the plaintiff, having,

in the night time, taken the wrong road, was crossing the waste for the purpose of getting to the other, and not being aware of the existence or locality of the quarry, and being unable, by reason of the darkness, to see it, fell in and was injured. It was held that the declaration disclosed no cause of action. The court said " No right is alleged; it is merely stated that the owners allowed all persons who chose to do so, for recreation or for business, to go upon the waste without complaint; that they were not churlish enough to interfere with any person who went there. He must take the permission with its concomitant conditions, and it may be perils."

In this case we think the circumstances imposed a duty upon the defendant to protect the excavation. It was a new excavation, made long after the public had been permitted to use the lot. It was not the case of a bare permission by the owner to cross his land adjoining a public street. The land had, by use long continued, been made, for the time being, a public place, and part of the highway. It was very probable that injury would occur if the area was left uncovered. The boundary of the alley was not defined, and persons crossing the lot in the usual way were not trespassers. It is quite conceivable that so long as the hotel building stood, it was an advantage to the owner that the unoccupied part of the lot should be open to the public. We think the defendant could not, under the circumstances, make a dangerous excavation and leave it unprotected without responsibility to those accustomed to use the lot as part of the highway, and who, while exercising due care, were injured by falling into it.

The court charged the jury that it made "no difference whether the excavation was seven, or nine, or ten feet from the originally established boundaries of the thoroughfare (alley); if it was so situated that a person lawfully using the thoroughfare, and, in a reasonable manner, was liable to fall into it, the defendant was liable," Construing the charge with reference to the undisputed facts in the case, it was not objectionable, and the exception thereto was not well taken. This disposes of the principal question in the case.

There was no error in the charge that Exchange alley was a thoroughfare. Whether it had been accepted by the public, so as to make it for all purposes a highway, was immaterial. The plaintiff was lawfully using it as a way at the time of the accident. We have examined the other exceptions, and none of them, we think, are well taken.

The judgment must be affirmed.

All concur, except EARL, J., not voting.

Judgment affirmed.