EARL FOX, Respondent, *v.* WARNER-QUINLAN ASPHALT COMPANY, Appellant.

*Negligence* — an owner of land is not liable to a mere licensee, injured by falling into an excavation while crossing the land.

1. The extent of the obligation of the owners or occupiers of land, not chargeable with affirmative negligence, to mere licensees permitted to go upon their land, is to refrain from inflicting upon such licensees intentional and wanton injury and from setting dangerous devices thereon. Where a person goes upon the premises of another without invitation, but simply as a bare licensee, and the owner of the property, passively, acquiesces in his coming, the owner is not liable for negligence if an injury is sustained by reason of a mere defect in the premises. (*Cusick* v. *Adams*, 115 N. Y. 55, followed; *Beck* v. *Carter*, 68 N. Y. 283, distinguished.)

2. Dangerous work in plain sight is notice to a mere licensee. A person who makes use of the premises of another for his own convenience and without any sanction, save the omission of the owner

to forbid him from doing so, has no legal cause of complaint against the owner by reason of having carelessly fallen into an excavation on the land.

*Fox* v. *Warner-Quinlan Asphalt Co.*, 139 App. Div. 807, reversed.

(Argued December 13, 1911; decided January 23, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 12, 1910, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. D. Jenney* for appellant. The Appellate Division erred in holding that under the facts the plaintiff had made a question for the jury whether defendant violated any duty it owed to him. (*McCann* v. *Thilemann*, 36 Misc. Rep. 145; 74 App. Div. 630; *Larmore* v. *C. P. Iron Co.*, 101 N. Y. 391; *Cusick* v. *Adams*, 115 N. Y. 55; *Splittorf* v. *State*, 108 N. Y. 205; *Weitzmann* v. *Barber Asphalt Co.*, 190 N. Y. 452; *Birch* v. *City of New York*, 190 N. Y. 397; *Downs* v. *Elmira Bridge Co.*, 179 N. Y. 136; *Magar* v. *Hammond*, 183 N. Y. 387; *Holmes* v. *D. & H. Co.*, 128 App. Div. 24; *Connelly* v. *Erie R. R. Co.*, 68 App. Div. 542.)

*Walter W. Magee* and *William M. Peckham* for respondent. It was error to grant defendant's motion for a nonsuit and to dismiss plaintiff's complaint. (*Brusso* v. *City of Buffalo*, 90 N. Y. 681; *May* v. *City of Brooklyn*, 46 N. Y. S. R. 553; *Beck* v. *Carter*, 68 N. Y. 293; *Driscoll* v. *N. & R. L. & C. Co.*, 37 N. Y. 637; *Walsh* v. *F. R. R. Co.*, 145 N. Y. 301; *De Boer* v. *Brooklyn Wharf Co.*, 51 App. Div. 289; *Wilson* v. *A. B. Co.*, 74 App. Div. 56; *Fitzgerald* v. *N. Y. C. & H. R. R. R. Co.*, 84 App. Div. 62; 179 N. Y. 559; *Knight* v. *Lanier*, 69 App. Div. 454; *Larkin* v. *N. Y. & N. R. R. Co.*, 46

16

N. Y. S. R. 658.)    Whether the defendant was guilty of negligence in the premises, which occasioned or contributed to the personal injuries received by the plaintiff, was a question of fact for the jury.    (*Driscoll* v. *N. & R. L. & C. Co.*, 37 N. Y. 637; *May* v. *City of Brooklyn*, 46 N. Y. S. R. 552; 139 N. Y. 650; *Walsh* v. *Fitchburg R. R. Co.*, 145 N. Y. 301; *Beck* v. *Carter*, 68 N. Y. 293; *Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 N. Y. 282; *Byrne* v. *N. Y. C. & H. R. R. R. Co.*, 104 N. Y. 362; *Lamphear* v. *N. Y. C. & H. R. R. R. Co.*, 194 N. Y. 172; *Potter* v. *N. Y. C. & H. R. R. R. Co.*, 163 N. Y. S. R. 150; *Knight* v. *Lanier*, 69 App. Div. 454; *Wilson* v. *American Bridge Co.*, 74 App. Div. 596.)    Whether the plaintiff was guilty of contributory negligence in the premises was a question of fact for the jury.    (*Kettle* v. *Turl*, 162 N. Y. 258; *Swift* v. *S. I. R. T. R. R. Co.*, 123 N. Y. 645; *May* v. *City of Brooklyn*, 46 N. Y. S. R. 552; 139 N. Y. 650; *Byrne* v. *N. Y. C. & H. R. R. R. Co.*, 104 N. Y. 362; *Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 N. Y. 282; *Lamphear* v. *N. Y. C. & H. R. R. R. Co.*, 194 N. Y. 172; *Beck* v. *Carter*, 68 N. Y. 293; *Driscoll* v. *N. & R. L. & C. Co.*, 37 N. Y. 637; *Knight* v. *Lanier*, 69 App. Div. 454; *Larkin* v. *N. Y. & N. R. R. Co.*, 46 N. Y. S. R. 658; 138 N. Y. 634; *Wilson* v. *American Bridge Co.*, 74 App. Div. 596.)

Willard Bartlett, J.    At the time of the accident out of which this suit has arisen and for several years prior thereto the defendant corporation was the owner of an open field within the limits of the city of Syracuse which is described as bounded on the north by West Brighton avenue, on the east by Midland avenue, on the south by West Lafayette avenue and on the west by Onondaga creek.    Between seven and eight o'clock on the evening of October 13, 1908, the plaintiff was walking across this tract along a route over which the public had been accustomed to travel on foot and in vehicles for a considerable

number of years when he fell into an excavation and was injured. The excavation was part of a sand and gravel pit which the defendant had begun to dig five years before and had enlarged from time to time. The plaintiff brought this action to recover damages for the injuries thus sustained, charging in his complaint that the public had used the route across the lot at the invitation of the defendant and its grantors, and that the excavation was negligently left unguarded. He was nonsuited at the Trial Term but the Appellate Division has reversed the judgment in favor of the defendant and granted a new trial.

There was no evidence of any invitation to the public to travel over the diagonal route across the defendant's land which they used for convenience as a short cut from one street to another. It had never been dedicated to the public use or worked by the highway authorities. All that can be said in plaintiff's behalf on this branch of the case is that the defendant did not forbid or in any manner interfere with public travel over it. Under these circumstances the plaintiff went upon the defendant's land as a bare licensee at best; and the measure of the defendant's obligations to him was that of a landowner to such a licensee.

The extent of this obligation was accurately stated and fully considered by Judge Gray in *Cusick* v. *Adams* (115 N. Y. 55. See cases therein cited.) "The principle is now well settled by repeated adjudications, in this country and in England, that where a person goes upon the premises of another without invitation but, simply as a bare licensee, and the owner of the property, passively, acquiesces in his coming, if an injury is sustained by reason of a mere defect in the premises, the owner is not liable for negligence; for such person has taken all the risk upon himself." (p. 59.)

In the case cited the plaintiff was injured by falling through a hole in a bridge which had become defective in

consequence of a failure to repair, while here the plaintiff was injured by falling into an excavation being carried on at the time of the accident. It is suggested that this difference renders the rule inapplicable which was declared in *Cusick* v. *Adams*, inasmuch as the injury to the plaintiff here was due to a progressive act on the part of the defendant; and *Beck* v. *Carter* (68 N. Y. 283) is cited in support of this distinction. It does not seem to me, however, that the decision in the latter case can have been intended thus to limit the general rule. In the opinion it is expressly declared that if the owner of land give a bare license or permission to cross his premises the licensee takes the risk of accidents in using the premises in the condition in which they are; and the court cites with approval the English case of *Hounsell* v. *Smith* (7 C. B. [N. S.] 730), in which a mere licensee fell into an uninclosed quarry near and between two public highways in the night time; and it was held that the failure to safeguard the excavation gave the injured person no right of action. Furthermore, it is to be noted that *Beck* v. *Carter* "was not the case of a bare permission by the owner to cross the land adjoining a public street," whereas this is precisely such a case.

In *Reardon* v. *Thompson* (149 Mass. 267) the plaintiff fell into a hole on the rear end of the defendant's lot. This hole was situated in an eight-foot strip of land over which the plaintiff undertook to pass for convenience without any invitation from the owners to use it. The court said that the failure to prohibit the use of the strip was not an invitation, and that the defendant was under no obligation to furnish short cuts from every street in the neighborhood; and the general rule applicable to cases of this character was declared to be that "a licensee goes upon land at his own risk and must take the premises as he finds them. An open hole which is not concealed otherwise than by the darkness of night is a danger which a licensee must avoid at his peril."

It thus appears that as to mere licensees the extent of the obligation of the owners or occupiers of land not chargeable with affirmative negligence is to refrain from inflicting upon such licensees intentional or wanton injury and from setting dangerous devices thereon such as spring-guns or like agencies for the purpose of harming trespassers. (*Weitzmann* v. *Barber Asphalt Co.*, 190 N. Y. 452.) All that the defendant did here was to continue an excavation upon its own land which it had the right to begin and prosecute without let or hindrance from strangers. Furthermore all that it did in this behalf was done openly and visibly; and this brings us to the second branch of the case which relates to the degree of the care exercised by the plaintiff himself. The record clearly and conclusively shows that he did not exercise any care whatever. He was thoroughly familiar with the locality, and he knew that the excavation was going on and that its trend was toward the short cut across the defendant's land. It has been declared by this court that dangerous work in plain sight is notice to a mere licensee. (*Downes* v. *Elmira Bridge Co.*, 179 N. Y. 136, 142.) So familiar was the plaintiff with the progress of this excavation that he was able to testify that on the 1st of August before the accident it had "worked down to a point about thirty feet from this route," and that on the 1st of October, thirteen days before he was hurt, it had progressed five feet further. Although the night was dark, so dark that he could not see his hand before him, and the plaintiff knew that the excavation was near him, within eight or ten feet of the path, he appears to have gone right on without making any effort whatever to discover its whereabouts or whether it had advanced up to the roadway as might reasonably have been conjectured from his previous knowledge of the manner in which the work was being conducted. A person who makes use of the premises of another for his own convenience and without any sanction save the omission of

the owner to forbid him from doing so has no legal cause of complaint against the owner by reason of having carelessly blundered into an excavation on the land. Such is the case of this plaintiff and I think he was properly nonsuited at the Trial Term.

The order of the Appellate Division should be reversed and the judgment of the Trial Term affirmed, with costs in both courts.

VANN, J. (dissenting). In dissenting from the views expressed in the prevailing opinion I will first state the facts in detail as the jury could have found them if the case had been submitted to them for decision.

The defendant owned a small tract of land in the suburbs of the city of Syracuse, bounded on one side by Onondaga creek and on the other three sides by public highways. There was a plainly marked and well-defined driveway extending entirely across the tract in a diagonal line from West Lafayette avenue on the south to West Brighton avenue on the north. This driveway had been used continuously by the public for more than twenty years and was practically a highway though not legally such, because it had never been accepted by the public authorities. It was of the uniform width of from fourteen to sixteen feet throughout the entire distance between the two avenues which it connected. It had no fence on either side, no grass grew on it, and it was simply naked earth, stone and gravel, worn by long use into a plain, hard, well-beaten road. It was not plowed or cultivated, although crops were raised on either side, and it was openly and notoriously used by the general public as a short cut from one avenue to the other. For more than twenty years, twenty-four years according to the recollection of one witness, it had been in daily use by all kinds of vehicles, including grocery, coal, dirt, milk and delivery wagons, hucksters, carriages, buggies, hacks, light wagons and heavy wagons, farmers' wagons loaded

with hay and produce, and the like. Men, women and children walked over it every day and apparently it was traveled upon much more than many regular highways in the country. Traffic thereon was continuous and increased as the years went by. There were no obstructions in the driveway, but it was an open and well-defined road, a highway for all practical purposes and was regarded as an actual highway by travelers and observers generally. During all this time its course and character were unchanged, except that its condition was improved by the long-continued use.

One witness, a physician, testified that since 1899 he had driven over it at all hours of the night and day, generally from one to five times during every twenty-four hours. His recollection was that for about ten years prior to the accident he had used it from 350 to 400 times a year, passing and meeting all kinds of vehicles on the way. Other witnesses gave evidence of the same character.

The accident in question happened on the 13th of October, 1908. For many years prior thereto the plaintiff had constantly used the driveway, the last time being about two weeks before he was hurt. During this period of two weeks he was absent from the neighborhood, but for two months before he had driven over the driveway every day except Sunday and for six or seven years before he had walked over it every day.

The defendant used the easterly part of the tract as a sand bed and as time passed the excavation made by taking away the sand gradually approached the driveway. From August 1st to October 1st, 1908, it progressed about five feet in that direction, but a steam shovel was introduced and after that the advance was more rapid. When the plaintiff went over it about two weeks before the accident the excavation was about thirty feet from the driveway, but during the fortnight following it was advanced, without his knowledge, substan-

tially across the driveway.   At this point it was twenty-five or thirty feet deep with steep sides.   There was no guard, light, notice of any kind or warning to protect those who had been accustomed to use the road.   On a dark night the plaintiff was walking upon the driveway with the care of an ordinary traveler on a highway, and having no knowledge of the excavation tried to cross the driveway, fell into it and was severely injured.   He brought this action to recover damages for the injuries thus sustained.   He was nonsuited at the Trial Term, but the Appellate Division unanimously reversed the judgment and ordered a new trial.   The defendant gave the usual stipulation and appealed to this court.

The defendant insists that even if it owed a social duty to the plaintiff it owed him no legal duty and, hence, is not liable in this action.   It founds this position on the principle that a landowner is under no obligation to one who travels on his land as a mere licensee, except to refrain from setting traps and spring-guns, and in case it becomes dangerous for any other reason to avoid inviting him, expressly or impliedly, to continue to travel as he had before.   Conceding the principle, I insist that this case, as the jury might have found, comes within the exception.

Acquiescence without notice or objection for a continuous period of more than twenty years in the use by the public of a driveway so well worn, plainly defined and generally used as to look like a highway, and for all practical purposes to be one, presents a question of fact for the jury as to whether such acquiescence under such circumstances is an implied invitation by the owner to use such way for the purpose of traveling thereon.   Moreover, the excavation was a pitfall, and in effect a trap within the meaning of the authorities.   It was more dangerous than a bear trap, which might not spring when touched, or a dynamite bomb, which might not explode when trodden on; and both of which might be easily

missed by a traveler on account of the small space occupied by them.   The pitfall extended across the driveway, and could not be avoided by one walking thereon in the night time if he kept on traveling in the usual way with no knowledge of its existence.   It was not a shallow hole, but was so deep and so situated that almost of necessity a pedestrian at night would fall into it.   The defendant knew the facts and dug the hole.   It knew that if travelers continued to use the roadway as they had for more than twenty years with the acquiescence of itself and its predecessors in ownership, injury was probable if not certain.   Constant user for a long period becomes user by consent, and long user by consent is evidence of an implied invitation to continue the use.   I think the jury could have found that an invitation was to be implied from the situation, and also that the pitfall was a trap, the same in legal effect as a bear trap.   I place both invitation and trap on the protracted user of what seemed to be a highway and was practically a highway, the sudden change through the affirmative act of the defendant from a condition of safety to one of danger, the care of the law for human life and the right of a traveler to expect, under the peculiar circumstances, that he could continue to travel with safety in the future as the general public, including himself, had in the past.   The jury could have found that acquiescence for so long a period in the continuous use of a driveway, which looked like a highway and was generally used as such, was the same in effect as if the defendant, impersonated, had said to the plaintiff: " This is an open driveway connecting two highways.   I do not object to your using it."   That is what the broad, plainly defined and much used road itself asserted in substance, and although the defendant knew this it let the road keep up its invitation after it had suddenly dug the deep pit and caused the danger.   Without warning, in a hasty and unexpected manner, it created a situation more dangerous than setting a spring-gun or a bear trap,

and yet the court is about to hold that it had a legal right to do so. If there was not evidence of an implied invitation sufficient to go to the jury in this case, in what case can there be?

I concede the general rule, clearly stated by Judge Andrews in an important case, and I rely upon the exception, as clearly stated by him in these words: "When the owner of land, expressly, or by implication, invites a person to come upon his land, he cannot permit anything *in the nature of a snare* to exist thereon, which results in injury to the person who avails himself of the invitation, and who, at the time, is exercising ordinary care without being answerable for the consequences. * * * In this case we think the circumstances imposed a duty upon the defendant to protect the excavation. It was a new excavation, made long after the public had been permitted to use the lot. It was not the case of a bare permission by the owner to cross his land adjoining a public street. The land had, by use long continued, been made, for the time being, a public place, and part of the highway. It was very probable that injury would occur if the area was left uncovered. * * * We think the defendant could not, under the circumstances, make a dangerous excavation and leave it unprotected without responsibility to those accustomed to use the lot as part of the highway, and who, while exercising due care, were injured by falling into it." (*Beck* v. *Carter*, 68 N. Y. 283, 292.)

In this case the authorities were carefully reviewed by the eminent judge, who quoted with approval from the opinion of Lord Cockburn in *Corby* v. *Hill* (4 C. B. [N. S.] 556), where he said: "The proprietors of the soil *held out an allurement* whereby the plaintiff was induced to come upon the place in question; they held out this road to all persons having occasion to proceed to the asylum as the means of access thereto. Could they have justified the placing an obstruction across the way

whereby an injury was occasioned to one using the way by their invitation? Clearly they could not."

The doctrine of *Beck* v. *Carter* was reaffirmed and somewhat extended by the following declaration in *Larmore* v. *Crown Point Iron Co.* (101 N. Y. 391, 394): " The owner of land in general may use it as he pleases, and leave it in such condition as he pleases. But he cannot without giving any warning, place thereon, spring guns, or dangerous traps which may subject a person innocently going on the premises, though without actual permission or license, to injury, without liability. The value of human life, forbids measures for the protection of the possession of real property against a mere intruder, which may be attended by such ruinous consequences. The duty in this case grows out of the circumstances, independently of any question of license to enter the premises. (*Bird* v. *Holbrook*, 4 Bing. 628.) So, also, where the owner of land in the prosecution of his own purposes or business, or of a purpose or business in which there is a common interest, invites another either expressly or impliedly to come upon his premises, he cannot with impunity expose him to unreasonable or concealed dangers as for example, from an open trap in a passageway. The duty in this case is founded upon the plainest principles of justice. (*Corby* v. *Hill*, 4 C. B. [N. S.] 556; *Smith* v. *London & St. K. Docks Co.*, L. R. [3 C. P.] 326; *Holmes* v. *North Eastern Railway Co.*, L. R. [6 Exch.] 123.) The duty of keeping premises in a safe condition even as against a mere licensee may also arise where affirmative negligence in the management of the property or business of the owner would be likely to subject persons exercising the privilege theretofore permitted and enjoyed to great danger. The case of running a locomotive without warning over a path across the railroad which had been generally used by the public without objection, furnishes an example. (*Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 N. Y. 289. See, also, *Beck* v.

*Carter*, 68 id. 283.) The cases referred to proceed upon definite and intelligible grounds, the justice of which cannot reasonably be controverted."

The doctrine of *Beck* v. *Carter* is so generally recognized that I make but one further quotation from the authorities. Judge PARKER, in *Murphy* v. *City of Brooklyn* (118 N. Y. 575, 579), laid down the general rule and then said: "There is an exception to this general rule. Where the owner expressly or by implication invites an individual or the public to come upon his land, he is liable to respond in damages to one who accepting the invitation is injured by pitfalls or snares maintained upon the premises."

I concede that the defendant would not be liable, for an omission to repair, as was held in a case relied upon in the prevailing opinion. (*Cusick* v. *Adams*, 115 N. Y. 55.) The defendant has not been held liable for any reason of that character, but for an affirmative, intentional act, done with full knowledge that it would result in great danger to the public, accustomed with its acquiescence during almost a generation to use the way where the danger existed. I concede also that in *Beck* v. *Carter* the path was near a public street and was used in connection with it, but here it was not a mere path near a highway. It was an ancient, worn, beaten driveway, sixteen feet wide throughout its entire length, not simply near or adjacent to a highway but actually connecting two highways and so situated and in such a condition as to lead the traveling public to believe that it was itself a highway and "thus induce them to use it as such." (*Binks* v. *Yorkshire Railway Co.*, 32 L. J. [N. S.] Q. B. 26.) It was quite as much a "part of the highway" as was the vacant lot in *Beck* v. *Carter*, and it was "used as a means of access" from one highway to another, which makes a stronger case for recovery than *Corby* v. *Hill*.

We cannot reverse the judgment appealed from with-

out overruling, whether we say so expressly or not, the leading case of *Beck* v. *Carter*, which for a generation has stood without criticism and has been recognized as the law of the state.

For these reasons, as well as those so well stated by Presiding Justice McLENNAN, in writing for the Appellate Division, I dissent from the judgment of reversal about to be pronounced and vote in favor of affirmance.

CULLEN, Ch. J., GRAY, HAIGHT, HISCOCK and COLLIN, JJ., concur with WILLARD BARTLETT, J.; VANN, J., reads dissenting opinion.