ABDUR RASHID, Plaintiff, *v.* LENA WEILL, Defendant.

Supreme Court, Trial Term, Bronx County, March 6, 1944.

*Jacquin Frank* and *Louis Amsterdam* for plaintiff.

*Mordecai Goldberg* and *Irving Segal* for defendant.

LEVY, J. Plaintiff seeks damages for personal injuries. At the time of the accident on May 11, 1942, he was engaged as an air raid warden in the performance of his duties during a test black-out, patrolling the block in which defendant's premises are situated. In the rear of that property there is an area-way adjoining a vacant lot and separated therefrom by a retaining wall. When the building was constructed it complied with statutory requirements. The wall rises slightly above the level of the vacant lot from which plaintiff was approaching the rear of defendant's premises to warn a tenant of an unextinguished light. He claims he stumbled over the rise and fell into the areaway, sustaining the injuries for which he seeks compensation. He charges the defendant with the duty, both statutory and common-law, to maintain a guardrail upon the wall, and it is her omission in that respect which is the basis of the claimed negligence.

Defendant contends that while section 62 of the Multiple Dwelling Law requires a guardrail upon a retaining wall on all buildings erected after April 18, 1929, there is no other similar provision affecting buildings then in existence. Unless such provision is shown to exist, plaintiff cannot succeed upon the theory of statutory negligence, since the building was constructed in 1911. Defendant does not dispute that legislative power resides in the City of New York to make a restrictive regulation which would require her to construct a guardrail, but urges that such power has not been exercised in the manner as claimed by plaintiff. Section 9 of the Multiple Dwelling Law (amd. L. 1942, ch. 735, L. 1943, ch. 60) provides: " § 9. *Application of local regulations.* Except as herein otherwise specified, every multiple dwelling shall be constructed and maintained in conformity with the existing law. No ordinance, regulation or ruling of any municipal authority * * * shall modify or dispense with any provision of this chapter. *But the provisions of this chapter, unless otherwise in section three hundred and sixty-five of this chapter expressly stated, shall not be understood to limit the power of cities to which the chapter is*

*applicable to make or enforce more restrictive regulations.* The department charged with the enforcement of this chapter shall have the power to make supplementary regulations relating to fire escapes and fire towers.'' (Italics supplied.) It becomes necessary, therefore, to examine the pertinent sections of the Building Code of the City of New York, comprising title C of chapter 26 of the Administrative Code of the City of New York (L. 1937, ch. 929), upon which plaintiff relies for such exercise of power.

Section C26–2.0 of that title provides: '' All matters, affecting or relating to the construction, alteration, demolition, or removal of structures, erected or to be erected in the city, are presumptively provided for in this title. This title does not provide presumptively for matters that are contained in the charter, the labor law, the multiple dwelling law, the general city law, the building zone resolution, or in the rules promulgated in accordance with the provisions of this title by the board.'' And by section C26–3.0 it is declared that the purpose of the title is '' * * * to provide standards, provisions and requirements for safe and stable design, methods of construction and sufficiency of materials in structures constructed, or demolished, after January first, nineteen hundred thirty-eight, and to regulate the equipment, maintenance, use and occupancy of *all* structures and premises.'' (Italics supplied.)

Since no provision is made in the Multiple Dwelling Law for guardrails on retaining walls in structures erected prior to April 18, 1929, and section C26–3.0 is intended to regulate the equipment and maintenance of *all* structures, plaintiff argues that any provision in the Administrative Code requiring guardrails must as a consequence apply to *all* structures. While the purpose of the title is thus clearly stated, it does not follow that every enumerated requirement in the ensuing sections must, even without further expression of intent, apply to all old or existing structures as well as buildings to be erected. The Code provision relating to guardrails is found in subdivision d of section C26–563.0, and is as follows: '' d. *Construction of retaining walls.*— All retaining walls *required under this section* shall be constructed in accordance with the requirements of sections C26–412.0 through C26–467.0, or sections C26–468.0 through C26–509.0, *and shall be provided with a substantial fence or guard rail* at least four feet high on the top thereof.'' (Italics supplied.) But there is nothing in the provisions of subdivisions a, b and c of that section to indicate that they

shall apply to buildings in existence. The retaining walls there required refer only to future construction. There·is nothing in the record to indicate the defendant's wall is one commanded by the provisions of subdivisions a, b or c. Since it is not shown that the wall is required by section C26–563.0, it follows defendant was not obliged, by statute at least, to construct a ·guardrail.

That, however, does not dispose of her obligation to use that degree of care commensurate with the circumstances and in conformity with the duty imposed by common law. The question remains, therefore, whether her duty in that direction, if any, owing to the plaintiff was violated.

The protection afforded to life and property by the air raid warden service is a community enterprise, which in its essential aspects is not unlike the service of the fireman and patrolman rendered in the performance of duty. Any circumstance inviting the attention and action of the warden is a compulsion he cannot faithfully resist. If necessity dictates entry upon private property the indicated action may reasonably be taken and it has the implied consent of the owner. At least tolerance of· refusal to permit such entry and to co-operate in the community enterprise is incomprehensible. If, therefore, plaintiff was acting reasonably in the performance of ·duty in entering upon defendant's property, or attempting to do so, he was there, at least, upon her implied invitation. (*Racine* v. *Morris,* 201 N. Y. 240.)

Moreover, the use of her property in the manner described was reasonably to be anticipated as to time, place and circumstance. The warden within his duties is charged with enforcement of complete compliance with black-out regulations. Violations must be discovered and removed with thoroughness and speed. In crossing the vacant lot to gain access to the rear of defendant's property and thus to admonish an offending tenant, plaintiff was in a lawful way and for a legitimate purpose entering upon the premises and had a right to assume no trap would confront him, and it was the duty of defendant to maintain her premises in a condition safe for the performance of that function. The fact that the air raid warden service created a comparatively passing use of defendant's property does not mitigate her unreasonable failure to anticipate the use and to guard against its hazards. While consideration may disclose some measure of negligence on the part of the owner of the adjoining vacant lot, yet this defendant,

too, should have foreseen the probability of a fall into the pit and guarded against it by erecting a fence or rail upon her wall. It may well be added that the Code provision tends to demonstrate the justice of measuring the defendant's conduct by the indicated standards, although, even without it, the proof establishes she failed to take any precaution to make the use safe and to prevent the fall. As was stated in *Petersen* v. *Crawford* (263 App. Div. 617), where the use by children of the yard appurtenant to defendant's premises was known to him under circumstances constituting the plaintiff an invitee, the defendant was charged with " the duty of keeping it in a reasonably safe condition." It was there also held that the proof showed the plaintiff's use of the yard should have been anticipated and " that the defective condition of the retaining wall of the yard might subject him to injury." And in *Beck* v. *Carter et al.* (68 N. Y. 283) the rule is clearly stated that " When the owner of land expressly, or by implication, invites a person to come upon his land, he cannot permit any thing in the nature of a snare to exist thereon, which results in injury to the person who avails himself of the invitation, and who, at the time, is exercising ordinary care without being answerable for the consequences."

The issues upon the question of common-law negligence are thus resolved in favor of plaintiff and he is awarded a verdict in the sum of $2,500.