**Ethel FLORENTINE, Plaintiff-Appellee,**

v.

**CHURCH OF OUR LADY OF MT. CARMEL, Defendant-Appellant.**

**No. 78, Docket 28995.**

United States Court of Appeals Second Circuit.

Argued Oct. 15, 1964.

Decided Jan. 13, 1965.

---

Max J. Merbaum, New York City, for appellee.

George J. Conway, New York City, for appellant.

Before WATERMAN, MOORE and SMITH, Circuit Judges.

MOORE, Circuit Judge:

Plaintiff, a New Jersey resident, brought suit in this diversity action against defendant, a church in New York City, to recover damages for injuries incurred when she fell down some steps in the church. Her charge of negligence is based upon the alleged failure to provide adequate lighting for the stairway. The jury found for plaintiff. Defendant appeals from the judgment entered thereon and from the trial court's order denying defendant's motion for a directed verdict or, in the alternative, for a new trial.

The facts are not disputed, and the only grounds urged upon us for reversal are two parts of the court's charge to the jury. The first concerns the applicability to defendant of Article 7, Section C26–280.0 of the Administrative Code of the City of New York, which requires that certain stairways be artificially lighted. The second relates to the question of whether as a matter of law plaintiff was an invitee in the church.

Plaintiff came from New Jersey to make her first and only visit to the Rectory of the church in order to obtain a baptismal certificate for her husband. A sign in front of the church, on 115th Street, indicated that the Rectory was on 116th Street. Access to the main doors of the church was blocked by a locked gate. However, plaintiff entered a small door at the front. Once inside she real-

ized, after walking about briefly, that she was in the church, not the Rectory. She returned to the back of the church and pushed an unlocked door which opened to a stairway leading to the locked main doors. Because it was a weekday, there was no artificial illumination in the stairway area which was dark. Plaintiff, however, proceeded and fell down a short flight of stairs, fracturing her right humerus.

New York law governs in this diversity case and again is before us the frequently presented question of determining what the law is or might be with relation to the facts. Article 7, Section C26–280.0, Administrative Code of the City of New York,[1] provides that "[a]ll stairways * * * and other required means of egress, together with all areas to which the public has access, shall be equipped with adequate, artificial lighting facilities. Such lighting facilities shall be used when adequate natural light is unavailable. * * *" Under Article 7, Section C26–719.0(c), "[t]he means of egress from * * * spaces used for purposes of religious worship * * * shall comply with article seven * * *." Moreover, the provisions of Article 7 shall apply "[u]nless otherwise specifically stated, * * * to all structures erected after January first, nineteen hundred thirty-eight * * *." Article 7, Section C26–272.0.

Article 1, Section C26–3.0 provides that:

"the purpose of this title [C the Building Code"] is to provide standards * * * for safe and stable design, methods of construction and sufficiency of materials in structures constructed, or demolished, after January first, nineteen hundred thirty-eight, and to regulate the equipment, maintenance, use and oc-

cupancy of all structures and premises."

The court charged the jury that violation of section C26–280.0 "is evidence that the defendant was negligent in the maintenance of the stairway." That the jury may well have relied upon this instruction as to the law is evidenced by its request, i. e., "We would like the definition of the New York City ordinance in regard to the illumination of areaways of public buildings as you were instructing us." There was no evidence at all as to whether or not the church was erected after 1938. As the opinion on the motion for a directed verdict or in the alternative for a new trial reveals, the court thought that section C26–280.0 was applicable without regard to the date of construction. Reliance for that conclusion was placed upon the general purpose clause of Title C which the court construed as differentiating between construction of buildings after January 1, 1938 and the regulation of "equipment, maintenance, use and occupancy of all structures and premises."[2]

Plaintiff argues that because the general purpose clause mentions an intention to regulate the "equipment, maintenance, use and occupancy of all structures and premises," and because Section C26–280.0 requires that "[a]ll stairways * * * be *equipped* with adequate, artificial lighting facilities," the regulation of lighting applies without regard to date of construction. However, the provisions for lighting fixtures are also includable within "provisions and requirements for safe * * * design * * *" which are stated in the general purpose clause to be applicable only to structures erected after 1938. Therefore, what is clear from the text of Article 7 cannot be obscured by reliance on the ambiguous general purpose clause. The latter must ac-

1. All references hereafter are to the Administrative Code of the City of New York.

2. The court also considered the construction clause of Title C, Art. 1, section C26–4.0, which provided that "[t]his title [is] * * * remedial, and shall be liberally construed to secure the beneficial purposes thereof."

cede to the operative text. 2 Sutherland, Statutory Construction, § 4820 (Horack 3d ed. 1943). Such was the view of the court in Rashid v. Weill, 181 Misc. 815, 817, 46 N.Y.S.2d 711 (Sup.Ct.1944). See also Beckman v. Seminole Studios, Inc., N.Y.L.J., Nov. 21, 1958, p. 13, col. 4 (Sup. Ct.1958).

■ When Article 7 is to apply to preexisting structures, the text makes it clear. For example, Section C26–277.0 makes it "unlawful to alter any structure, *whenever erected*, in such a manner as to reduce the means of egress to less than is required under the provisions of section C26–273.0." (Emphasis added.) That specific time provision is absent, however, in section C26–282.0, which makes it "unlawful to obstruct or reduce the clear width in any manner of any * * * means of egress required by this article * * *." Plaintiff argues that the latter section is an example of a *regulation of use*, which is not limited in application to post-1938 structures. But we think that both sections encompass structural features. Indeed, "reduce in any manner" could hardly be more broadly written to cover reductions by both use and structural alteration.

Turning to such New York law as there is on the subject, we are persuaded by the view of the New York Court of Appeals as to the predecessor of section C26–280.0, which was in an article, like Article 7, that applied only to buildings erected after its effective date, "unless otherwise specifically stated." In McCabe v. Mackay, 253 N.Y. 440, 171 N.E.

699 (1930), Chief Judge Cardozo held the lighting requirements inapplicable to a building not shown to have been erected after enactment of the Building Code. See Frey v. Russian Village, Inc., 72 F.2d 261 (2d Cir.1934). Although the Building Code there applicable did not have an explicit purpose clause like section C26–3.0, it covered use and equipment as well as structure. Indeed, if section C26–280.0 is regarded as a provision concerning use, as plaintiff argues, so must have been its predecessor. The absence of a similar specific purpose clause can hardly be sufficient to prevent *McCabe* from having continued vitality.

Plaintiff refers us to Smulczeski v. City Center of Music & Drama, Inc., 3 N.Y.2d 498, 169 N.Y.S.2d 1, 146 N.E.2d 769 (1957), as authority for the application of the lighting provisions of the Code to structures antedating 1938. But that case may be readily distinguished. The court never addressed itself to the question whether the date of construction was material. Apparently the record does not indicate that date, although plaintiff assures us that the building in question was built long before 1938. However, the court had no need to consider date of construction. That case dealt with Article 13, which regulates special occupancy structures. That Article, unlike Article 7, contains no provision similar to section C26–272.0 limiting its application to structures erected at any particular time.[3] Rather, specific savings clauses are included to bar application of the article to a "theatre, opera house, or structure intended to be used for theatri-

3. We are aware of section C26–715.0(a) which provides with respect to Article 13 that

"[e]very structure * * * to be used for entertainment or instruction of any kind, erected after January first, nineteen hundred thirty-eight, for the accommodation of more than three hundred persons, shall be built to comply with the requirements of this article * * *. It shall be unlawful to use for public entertainment or instruction of any kind, any structure * * * which, on January first, nineteen hundred thirty-eight, is not in actual use

for such purposes, or to use any structure erected after January first, nineteen hundred thirty-eight, not in conformity with the requirements of this article until such structures conform to this article."

It is clear from the text of this section that it governs all structures used for certain purposes after January 1, 1938, without regard to date of construction, unless the structure was actually being used for those purposes at that time. This is quite the opposite from the way plaintiff asserts the Building Code as a whole is made effective.

cal or operatic purposes, * * * and the Town Hall, * * * and any public dance hall * * *." Section C26–751.0. Existing motion picture theatres needed to comply only to the extent ordered by the borough superintendent. Section C26–769.0. Thus, Article 13, which also covers both construction and use, applies without regard to date of construction to all special occupancy structures not specifically excepted, even though it, being in Title C, is subject to the same general purpose clause as is Article 7.

It may well be reasonable to say that regulation of use should not be governed by date of construction, although regulation of structure should have only prospective application. But the Building Code, which was the product of years of extensive consideration and discussion, see McGoldrick, Graubard & Horowitz, *Building Regulation in New York City: A Study in Administrative Law and Procedure* 89 (1944), does not so distinguish; rather it provides exact treatment of different kinds of structures with respect to different aspects of regulation and different kinds of existing structures were accorded different treatment.

We therefore conclude that absent proof that the church was constructed after January 1, 1938, it was error to charge the jury that violation of section C26–280.0 could be taken as evidence of negligence. It was also prejudicial error because defendant's duty, apart from the Code, was merely the common law duty of a landowner to supply lighting or other special warning only when there is a peculiar or defective condition making the stairway not reasonably safe for use. It is still for the jury to make this determination in light of all the circumstances, but allowing the jury to consider violation of the Code as evidence of negligence made it quite possible that, but for reference to the Code, defendant's conduct would have been found proper. See McCabe v. Mackay, supra; Frey v. Russian Village, Inc., supra; *cf.* Mulac v. Green Tree Homes, Inc., 256 App.Div. 1107, 11 N.Y.S.2d 563 (2d Dept.1939); Tauber v. Home Owners' Loan Corp., 267 App.Div.

766, 45 N.Y.S.2d 293 (2d Dept.1943). For this reason we reverse the trial court's order denying defendant's motion for a new trial. Appellant also contends that the trial judge should not have charged that, as a matter of law, the plaintiff was a lawful invitee of the defendant. In view of the facts proved at the trial, we find no error in this charge.

Judgment reversed and a new trial ordered.