## OWEN O'BRIEN v. MARIETTA HILBURN.

In an action by a married woman, for the recovery of negroes, as her separate property, against one who claims under a purchase from her husband, it is immaterial whether the instrument, under which she claims, vest in her the absolute ownership, or only a life estate; nor is it material, as respects the measure of damages, unless the pleadings and evidence show it to be so.

Where the plaintiff claimed under a deed from her father, which said, "in con-"sideration of love and natural affection, cherished by myself towards my "beloved daughter M., the wife of F. M. H., and the heirs of her body, I, the "said J. S., do loan and in the possession of the said M., for and during her "natural life, six negroes," (after describing them, concluding) "and the said "negroes are to be for the sole use and benefit of the said M., during her "natural life; and at her death, to be the property, to be equally divided "among and between the heirs of her body:" the court say, "it would seem "that, under the deed, the plaintiff took an absolute estate."

The declarations of a party, under whom the plaintiff derived her title, are not admissible to prove that such party did not own the property, and that the title was in a third person, where the defendant does not set up any claim of title from such third person, or offer the evidence, as the basis of proof of title derived from such person.

A defendant in trover, cannot set up property in a third person, without showing some claim, title, or interest in himself, derived from such person.

O'Brien v. Hilburn.

Questions of the admissibility of evidence will be considered, and responded to by the court, in the very terms in which they are propounded. If the evidence be not admissible, for the purpose for which it is offered, on objection to it, the court will not inquire whether it might not be admissible for some other purpose.

The declarations of a party, unaccompanied by some corresponding act, as to the title of property of which he is not in possession, are not admissible as evidence against one claiming under him.

There is no error in excluding evidence, charging the plaintiff with medical bills, and expenses of nursing and rearing slaves, incurred by the defendant after the commencement of the suit.

The defendant could only ask that the question, as to the actual value of the negroes, by reference to their ages and condition, should be fairly left to the jury; and this was done by the evidence received, and the charge of the court.

It is no objection to a judgment, that the jury did not find expressly upon all the issues submitted to them; it is only material that their finding should embrace all that is essential to the rendition of the judgment.

Where a suit for personal property was commenced by sequestration, and the defendant replevied the property, and upon an appeal by him, from a judgment in favor of the plaintiff, the case was remanded by the Supreme Court for further proceedings, and a judgment given against the plaintiff, for $17 90 costs, which was immediately paid by the defendant, and the execution for the costs transferred to him by the clerk, under which he caused the property, viz., three negroes, worth $1,200, then in his possession, to be levied upon and sold by the sheriff, and at the sale purchased them for the sum of $23 07: *Held*, that it was not erroneous to instruct the jury, "that in deter-"mining whether the defendant acquired any title by said purchase, they "should look to all the circumstanses surrounding it—the insufficiency of the "price, the relation of the parties, and their equities and rights—that though "insufficiency of price is not sufficient, of itself, to invalidate a sale, yet it "may be looked to, in connection with other circumstances, to determine the "character of the transaction; and that property in legal custody, is not "subject to a forced sale, inconsistent with the rights of the parties in the "subject matter, secured by such custody to them."

ERROR from Williamson. Tried below before the Hon. Edward H. Vontress.

Suit by the defendant in error, a married woman, brought by authority of the district judge, (her husband refusing to join therein,) against the plaintiff in error, for the recovery of a negro woman, Lydia, and her children, as her separate property. The petition was filed October 25th, 1849; and at the

same time, a writ of sequestration was issued for the negroes, under which they were seized by the sheriff. On the same day, they were replevied by the defendant, who, in answer to the petition, pleaded a general denial; that he purchased the negroes from F. M. Hilburn, the husband of the plaintiff, to whom they belonged, and had paid him a full and fair consideration for them, and had received from him a bill of sale, which was made a part of the answer; that if said negroes were the property of the plaintiff, (which he denied) she fraudulently concealed her title to them, and represented her husband to be the owner, in consequence of which he was induced to purchase them.

A trial was had, and a judgment given for the plaintiff, from which the defendant appealed; and at the Austin Term, 1852, of the Supreme Court, this judgment was reversed, and the cause remanded for further proceedings. (O'Brien v. Hilburn, 9 Tex. Rep. 297.)

After the case was remanded to the District Court, the defendant pleaded, *puis darrein continuance*, that a judgment had been rendered by the Supreme Court, on said appeal, against the plaintiff, for the sum of $17 90, costs in said court; that an execution issued upon said judgment, and the negroes sued for, had been levied upon and sold by the sheriff, under and by virtue of said execution; and that he became the purchaser of them at the sale. The bill of sale, by the sheriff to defendant, was made a part of the answer, from which it appeared, that the amount paid by him for the negroes, was $23 07. He also answered, that since the trial of the case in the Supreme Court, he had been forced to expend a large amount for medical bills, and other necessary expenses for the cure of the negroes while sick, the nurture and care of the children, and the capture of the woman who ran away, &c., amounting to the sum of $1,680, a bill of particulars of which was attached to the answer, for which he asked judgment in reconvention.

Upon the trial, the plaintiff proved, by a number of witnesses, that the said negro woman, Lydia, was the property of Matthias

Hilburn, (the father of the plaintiff's husband,) in the year 1845, and in his possession in Lamar county, Texas; and by said M. Hilburn, that he owned her from the time she was born, until the year 1846, when, as he and the other witnesses testified, he sold her to Jesse Shelton, the plaintiff's father, who in December, 1846, delivered her, with other negroes, to the plaintiff, and at the time made her the following deed:

"Know all men that I, Jesse Shelton, for and in considera-
"tion of the sum of one dollar to me in hand paid, and also in
"consideration of love and natural affection, cherished by my-
"self towards my beloved daughter, Marietta, the wife of F. M.
"Hilburn, and the heirs of her body, I, the said Jesse Shelton,
"do loan and in the possession of the said Marietta, for and
"during her natural life, six negroes, named and aged as
"follows, to wit, Lydia, aged twenty three years," (here followed
a description of the other negroes,) "and the said negroes are
"to be for the sole use and benefit of the said Marietta, during
"her natural life; and at her death, to be the property, to be
"equally divided among and between the heirs of her body.
"Given under my hand and seal, the 15th December, 1846.
        "JESSE SHELTON.  [SEAL.]"

Hopkins, a witness for the plaintiff, testified, that he saw the negro woman in defendant's possession, in December, 1848, and asked defendant how he came by her. He said, that she was in *soak* for about $300. Witness then remarked, that he had better be careful how he traded for her, for she was not Hilburn's property, as he (witness) knew she belonged to his wife. Some time afterwards, say near a month, the defendant told him he had purchased the woman. Witness then told him, that his title was not worth anything, as the negro belonged to Hilburn's wife. Defendant replied, that he was not uneasy, as Hilburn was too much of a gentleman to trade property not his own.

The testimony also showed, that F. M. Hilburn and his wife, (the plaintiff,) came from Lamar county to the city of Austin, in the fall of 1848, bringing with them said negro woman; that

Hilburn was a gambler and racer, and while there, got out of money, and being anxious to raise money by mortgaging said negro, was referred by a witness to the defendant, who was the proprietor of a restaurant.

The defendant proved that F. M. Hilburn mortgaged the said woman to him in December, 1848, for the sum of $300; and on the 6th of February, 1849, he purchased her from Hilburn absolutely, for the sum of $700, and Hilburn, on that day, executed to him a bill of sale for her. He also introduced in evidence, the judgment of the Supreme Court, upon the appeal, for $17 90, costs against plaintiff; the execution thereon issued December 18th, 1852, together with the endorsements upon it, which showed that it had been transferred by the clerk of the Supreme Court to the defendant, and 'that it was levied on the 6th of January, 1853, on said negro woman, Lydia, and her two children, pointed out for levy by the defendant; and that they were sold on the first Tuesday in February, and purchased by defendant, for the sum of $23 07; and a bill of sale executed to him by the sheriff, which was read in evidence. Testimony was introduced, on behalf of both parties, to prove the value of the negroes, and the value of their hire.

The defendant proposed to prove, that Matthias Hilburn had for several years, to wit, from 1839 up to the time witness left Arkansas, in 1844, disavowed all title to the negroes; had stated that they belonged to his children, Mrs. A. B. Greenwood, Mrs. Howard, and Frank Hilburn, husband of plaintiff, and Charles Hilburn; that Howard, who held them in trust for these heirs, had mortgaged the negroes to the witness, as property of these children, and had redeemed them and held them in possession; that Matthias Hilburn always disclaimed title; that he was overwhelmingly involved, and could not have held them. This proof was offered to sustain the fact, that when Matthias Hilburn sold the negroes to Shelton, (as he swore,) he had no title; to which plaintiff objected, on the ground "that it was "impertinent to the issue, hearsay, and incompetent to show that "Matthias Hilburn did not have title at the time he sold to Shel-

"ton, or that Shelton's title was not valid;" which objections were sustained, and the defendant filed a bill of exceptions to the ruling of the court. Defendant also offered to prove the expenses incurred by him for medical attention to the negroes, for the nursing and rearing the children, and for the capture of the woman, when she ran away, &c.; to which plaintiff objected, and the objection being sustained by the court, the defendant again excepted.

The court, among other matters, instructed the jury as follows: "You will then inquire whether defendant acquired any "title to said Lydia, and her increase, by his purchase at the "sheriff's sale, in the county of Travis, on the 1st day of Feb- "ruary, 1853; and in settling this inquiry, it is your duty to look "to all the circumstances which surround said purchase, the insuf- "ficiency of the price, the relation of the parties, and their "equities and rights. The insufficiency of the price is not suffi- "cient, of itself, to invalidate a purchase or sale, but it is a cir- "cumstance which, taken with other circumstances of suspicion, "may be looked to by you, to explain the character of the "transaction; that under the law, frauds cannot be definitely "defined, but must be determined by the circumstances of each "particular case; it cannot be inferred, but must be proven; "but it need not be proven by actual or positive evidence, for "it may be proven by circumstantial or presumptive evidence; "that under the law, property in legal custody, is not subject "to forced sale inconsistent with the rights of the parties in the "subject matter, secured by such custody to them." The jury were also instructed, "that the deed from Jesse Shelton, taken "altogether, vested an absolute estate in the plaintiff, notwith- "standing the informality of the instrument, and the inappro- "priate use of the language, or the terms thereof." The court also submitted to the jury the following special issues, to wit:

1st. Is the property in controversy the separate property of the plaintiff? If so, by title from whom, and when was the title acquired?

2d. Did the defendant obtain possession of the negro woman

Lydia, and her child Sarah, by purchase from F. M. Hilburn, plaintiff's husband? If so, when was the purchase made?

3d. Did the plaintiff join her husband, in the sale of the negroes made by him to the defendant, or did she use any expression, or do any act with reference to the title of the negroes, to induce the defendant to believe the title was in her husband, and that he had the right to sell them as his own; and which acts or expressions did deceive the defendant, as to the title of the negroes?

4th. What is the present value of the negro woman, Lydia, of the girl Sarah, of the girl Elizabeth, and of the youngest child of said Lydia?

5th. What has been the value of the hire of the woman Lydia, per month, since the 25th day of October, 1849, to the present time? Has the hire of the girl Sarah, since she has been in defendant's possession, to the present time, been worth anything? If so, how much per month, from what time, and to what time?

6th. At the time O'Brien purchased from Hilburn, did he have notice of Mrs. Hilburn's title?

7th. Was this suit pending at the time of the purchase under execution sale by O'Brien, and had the defendant given, in this suit, a replevin bond for the forthcoming of the property purchased at the time of said purchase?

8th. Did the defendant procure the execution from the Supreme Court, for the purpose of having the slaves in controversy sold under the same, in order that he might purchase in Mrs. Hilburn's title? And were there any circumstances attending said sale and purchase, indicating an intention, by defendant, to take advantage of Mrs. Hilburn?

9th. What was the amount paid by O'Brien on said execution; and what amount, at the time of said sale, was he indebted to the plaintiff for hire of said slaves sued for?

The jury will answer, in their verdict, the above issues.

ED. H. VONTRESS, District Judge.

The jury returned the following verdict:

Answer to first interrogatory. Yes. By title from Jesse Shelton, acquired on the 15th day of December, 1846.

Answer to second interrogatory. Yes. The purchase was made February 6th, 1849.

Answer to third interrogatory. 1. No. 2. No.

Answer to fourth interrogatory. 1. Lydia, nine hundred dollars. 2. First girl, seven hundred dollars. 3. Second girl, five hundred and fifty dollars. 4. Third girl, four hundred and fifty dollars.

Answer to fifth interrogatory is, that according to the evidence, we the jury find for the plaintiff, ten dollars per month for the entire services of said negroes, from the time of the commencement of this suit to this date, with the amount of the price of the sheriff's sale, paid by O'Brien, deducted.

C. C. HICKMAN, Foreman.

We the jury find for the plaintiff.

C. C. HICKMAN, Foreman.

There was a judgment for plaintiff for the negroes, and if they were not delivered, an alternative judgment for their value, as found by the jury, and also for hire, according to the finding of the jury. Defendant moved for a new trial, upon the ground that the court erred in excluding the testimony offered by him, and because the verdict was contrary to the evidence, the law, and the charge of the court; which motion was overruled.

*Chandler* and *Turner*, for plaintiff in error.

*J. A.* and *R. Green,* and *John Hancock,* for defendant in error.

WHEELER, CH. J. As respects the right of the plaintiff to maintain this action, it is not material whether the deed of gift, of the 15th of December, 1846, vested in the plaintiff the absolute ownership, or only a life estate in the property. Nor is it rendered material by the pleadings and evidence, as respects

the measure of the recovery in damages. But it would seem that, under the deed, the plaintiff took an absolute estate. (Hawkins v. Lee, *supra*, 544, and cases cited.).

We think the evidence, proposed to prove a disclaimer of ownership, by the elder Hilburn, in Arkansas, and the other evidence, of transactions there, respecting the property, offered for the purpose of proving that Hilburn had no title, when he sold to Shelton, was well taken, and rightly sustained by the court. It is well settled, that questions upon the admissibility of evidence, will be considered and responded to by the court, in the very terms in which they are propounded. If evidence proposed is not admissible for the purposes for which it is proposed, on objection to its admissibility, the court will not inquire whether it might be admissible for any other purpose. It will suffice, to sustain the objection, that it is not admissible for the use the party proposes to make of it. That a defendant in trover, cannot set up property in a third person, without showing some claim, title, or interest in himself, derived from such person, has been expressly decided. (Duncan v. Spear, 11 Wend. Rep. 54; Hurst v. Cook, 19 Id. 463; Davis v. Loftin, 6 Tex. Rep. 489.) The defendant, in his answer, does not set up any claim of title, derived from any third person in whom he proposed to show title; nor was the evidence offered to prove title in any third person, as the basis of proof of a derivation of title from such person. His pleadings were framed with an entirely different view, and did not lay the foundation for the introduction of such evidence. Besides, it does not appear that Hilburn was in possession of the property when he made the admissions, or that they were accompanied by any corresponding act; and we are of opinion that the evidence, under the pleadings, and as it was proposed, was clearly inadmissible. If it had been admitted, it did not tend to the proof of any material issue, and could have had no proper influence upon the decision of the case.

All the expenses with which the defendant sought to charge the property, were incurred by him after the bringing of this

suit, and in his own manifest wrong. Indeed, the evidence tends strongly towards the conclusion, that the defendant knew, or by the use of ordinary diligence, might have known, the true condition of the title, when he made his purchase, and that his purchase was wrongful, as in derogation of the plaintiff's right. There was no error in excluding the evidence proposed, for the purpose of charging the plaintiff with these expenses. Evidence was admitted to prove the actual value of the use of the property to the defendant, and the charge of the court fairly left to the jury, the question of its value, considered in reference to the ages and condition of the slaves; and this was all the defendant could ask upon that point.

It is no objection to the judgment, that the jury did not find expressly upon all the issues submitted to them. It was only material, that their finding should embrace all that was essential to the rendition of the judgment, and this it does.

The ruling of the court, upon the effect of the defendant's purchase of the property at the sheriff's sale, is in entire accordance with the decision of this court in Fowler v. Stoneum, 6 Tex. Rep. 60, and the well settled law elsewhere. (Primot v. Thebodeaux, 6 La. Rep. 10; Hagan v. Lucas, 10 Pet. Rep. 400; Hackley v. Swigert, 5 B. Monr. Rep. 87.)

We are of opinion that there is no error in the judgment, and it is affirmed.

Judgment affirmed.