J. M. GUFFEY PETROLEUM CO. v. DINWIDDIE.    (No. 8276.)*

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 27, 1915. Rehearing Denied Jan. 8, 1916.)

1. MASTER AND SERVANT ☞276—ACTION FOR INJURY—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

Evidence in a servant's action for injury from falling from a ladder on the side of an oil derrick, *held* to sustain the jury's findings that the defendant's negligence in affixing a step to the ladder and in allowing it to become and remain loose and unsafe, was the proximate cause of plaintiff's injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. ☞276.]

2. MASTER AND SERVANT ☞297—ACTION FOR INJURY—FINDINGS—JUDGMENT.

Findings that defendant was guilty of negligence in the construction of a ladder, which negligence was the proximate cause of plaintiff's injury, would support a judgment for plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1195–1198; Dec. Dig. ☞297.]

3. APPEAL AND ERROR ☞1071—REVIEW—FINDING OF IMMATERIAL FACT.

The finding of immaterial facts cannot be made ground for reversal if the judgment is not in conflict with the findings upon material issues.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. ☞1071.]

4. TRIAL ☞351—ISSUES—INVITATION.

In a servant's action for injury from falling from a ladder on defendant's oil derrick, defendant's requested issue as to its negligence in the construction and maintenance of the steps of the ladder was an invitation to the court to submit issues as to defendant's negligence in the manner in which a step was fastened to the ladder and in allowing the step to become loose and unsafe.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 829, 834–839; Dec. Dig. ☞351.]

5. TRIAL ☞352—SPECIAL INTERROGATORIES—STATUTE.

Special issues as to the defendant's negligence in fastening a step to the ladder, and in allowing the step to become loose, sufficiently presented the question suggested by the requested charge as to whether defendant was negligent in the construction and maintenance of the steps of the ladder, and in a form more in accordance with Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, providing that the court on the request of either party shall submit a cause upon special issues, stated distinctly and separately, so as to be answered separately.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 840–842, 844, 845; Dec. Dig. ☞352.]

6. EVIDENCE ☞587—SUFFICIENCY—CIRCUMSTANTIAL EVIDENCE.

A material fact or issue may be established as well by circumstantial evidence as by direct evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2436; Dec. Dig. ☞587.]

7. DAMAGES ☞208—ACTION FOR INJURY—IMPAIRMENT OF EARNING CAPACITY.

In a servant's action for personal injury by falling from a ladder on defendant's oil derrick, striking upon his back with his head on some iron tubing, evidence *held* to warrant a

submission of plaintiff's impaired ability to earn money in the future.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 54, 64, 68, 132, 144, 145, 205, 220, 533, 534; Dec. Dig. ☞208.]

8. TRIAL ☞232—INSTRUCTIONS—ERROR.

Where a servant's action for personal injury was submitted to the jury on special issues, instructions informing the jury of the facts to be found to entitle plaintiff to recover were not erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 524, 525; Dec. Dig. ☞232.]

9. TRIAL ☞351—REQUESTED INSTRUCTIONS—GIVEN INSTRUCTIONS.

In a servant's action for personal injury, the refusal of special issues requested by defendant was not error, where the special issues submitted by the court sufficiently comprehended all of the material issues in the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 829, 834–839; Dec. Dig. ☞351.]

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Action by T. B. Dinwiddie against the J. M. Guffey Petroleum Company. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 168 S. W. 439.

Carrigan, Montgomery & Brittain, of Wichita Falls, for appellant. E. W. Nicholson and J. M. Blankenship, both of Wichita Falls, for appellee.

CONNER, C. J. The appellant company appeals from a judgment in appellee's favor in the sum of $4,225. The judgment was awarded as damages for personal injuries suffered by appellee in a fall from a ladder affixed to an oil derrick owned and operated by the Petroleum Company. In his petition appellee alleged that the ladder had been improperly and negligently constructed and maintained. To appellee's petition the appellant answered by a general denial, pleas of contributory negligence, and assumed risk. Appellant also pleaded a legal settlement with the appellee. The case was submitted to a jury upon special issues, which, having been answered in appellee's favor, and the judgment as above stated, followed.

[1] The majority of questions presented by appellant's assignments of error are dependent upon the state of the evidence. Complaint is made of the refusal of the court to give an instructed verdict, of the court's charge in submitting the issue of negligence alleged, and of the verdict of the jury, all upon the ground, substantially, that there was no affirmative proof of the negligence alleged and upon which appellee's case was based. But a careful examination of the evidence has resulted in the conclusion on our part that all such assignments of error must be overruled. Briefly and substantially stated, the evidence sufficiently shows that appellee was one of the appellant's employés on January 23, 1913, and that as such it was at times necessary in the performance of his duty to ascend and descend a ladder affixed to an oil derrick over a well designated in the testimony as "Miller Well No. 5." The derrick was in the shape of a pyramid 80 or 90 feet high, about 22 feet wide at the bottom, and about 6 feet wide at the top; the ladder was constructed from the bottom to the top by two plane 2x4 pieces of timber or "runners" spiked to the outside of the derrick, with steps made of plank 1¼ inches thick fastened to the runners or upright timbers of the ladder with eightpenny nails driven, one at each corner of the step, through the step and into the runner. On the day of the accident appellee ascended the ladder to a platform erected within the frame of the derrick about 60 feet from the bottom, for the purpose of pulling, as was his duty, some tubing out of the well. The appellee himself was unable to detail how his fall occurred, the injury, as his testimony tends to show, having destroyed his recollection, and no witness saw appellee at the moment his downward course began. Another employé, however, immediately before saw the appellee walking on the girders of the derrick on about a level with the platform just mentioned towards the ladder; immediately afterward the witness heard an exclamation, "Oh!" on appellee's part, and looked up and saw appellee falling, with a step from the ladder immediately following him. Appellee, as the evidence tends to show, fell upon his back with his head on some iron tubing, and was seriously injured in his head and shoulders. It was found that the step was from the ladder some 55 or 60 feet from the bottom of the derrick; that the top nails on each side of the step had been pulled out unbent; that the bottom nails on each side were bent back almost double across the edge of the plank or step. The witness Henery Ammann testified, in substance, that he had followed the vocation of contracting and building for a livelihood some 27 or 28 years, and as a contractor had built ladders as high as 70 feet. He examined the step mentioned and the nails with which it had been attached to the runners, and he pronounced the nails common eightpenny nails; and gave it as his opinion that:

"A ladder 52 feet high constructed with steps of 1¼ inches, using one common eightpenny nail in each corner, is not a safe and proper construction of that ladder. An eightpenny common nail is generally about 2⅜ inches long, and when that nail passes through that 1¼ inch step there is about 1⅛ inches left to go into the upright to hold it."

There was testimony on the part of other witnesses that the derrick in question had been built in August, 1912, that the dripping of oil, etc., had a tendency to loosen the steps of the ladder, and that it was proper to make frequent examinations thereof in order to insure safety in its use, and several witnesses testified that they had not noticed any in-

spection or examination of the ladder in question during the period of their 6 or 8 months' service.

The jury in answer to special issue 10, submitted by the court, specifically found that the defendant company had been "guilty of negligence in the manner in which the step was affixed to the ladder." And in answer to special issue 11 found that the defendant company was "negligent in allowing such a step to become and remain loose or out of repair and unsafe." The jury also gave an affirmative answer to issue No. 12, which was in the following form:

"If you have answered either issue No. 10 or 11 in the affirmative, then was such negligence the proximate cause of plaintiff's injury?"

[2, 3] We feel no hesitation in saying that in our opinion the evidence not only authorizes the submission of these issues, but is fully sufficient to support the findings of the jury thereon. Or, if it be conceded, as is insisted by appellant, that the evidence failed to support the finding in answer to issue No. 11, it cannot materially affect the result. There yet remains the finding undoubtedly supported by the testimony that the appellant company was guilty of negligence in the construction of the ladder, and this finding, with the finding in answer to issue No. 12, as undoubtedly supports the judgment. As said in Kelley v. Ward, 94 Tex. 289, loc. cit. 294, 60 S. W. 311:

"The finding of immaterial facts cannot be made ground for reversal, if the judgment is not in conflict with the findings upon material issues."

See, also, to the same effect, Sears v. Sears, 45 Tex. 557; Gibson v. Moore, 22 Tex. 616; O'Farrell v. O'Farrell, 56 Tex. Civ. App. 51, 119 S. W. 901.

[4] Moreover, appellant requested the submission of the following issue:

"State whether or not the defendant was negligent in the construction and maintenance of the steps of the ladder on the derrick on Miller well No. 5, as described in the plaintiff's petition."

By numerous decisions this amounted to an invitation on appellant's part to the court to submit both issues enbodied in the special instruction.

[5] And to the further contention of error on the part of the court in refusing this special instruction, it is to be observed that special issues 10 and 11, as submitted by the court, sufficiently presented the question suggested in the special charge and in a form, too, more in accordance with article 1984a of the Revised Statutes, which, among other things, specially provides that the court, upon the request of either party, is required to submit a cause upon special issues raised by the pleadings and the evidence in the case, and which particularly declares that:

"Such special issues shall be submitted distinctly and separately, and without being intermingled with each other, so that each issue may be answered by the jury separately."

See General Laws 1913, p. 113.

[6] In connection with this branch of the case we might further add that while it is true no witness was able to testify that he saw the appellee, after starting towards the ladder as stated in the beginning, actually get thereon and saw appellee as he grasped the step of the ladder that gave way and saw the step as it pulled loose from its fastenings, yet no other theory of appellee's fall seems consistent with the circumstances, and it is unquestionably true that a material fact or facts may be established as well by circumstantial as by direct evidence. The condition of the nails in the step as found immediately after appellee's fall, the fact that the step was above him and not below in its descent, the fact that appellee fell backward upon his head and one shoulder, the fact that the ladder extended—particularly at the point where the step gave way—almost, if not quite, perpendicularly, the fact that the evidence tends to show that he had completed the performance of his duty on the platform in the derrick some 60 feet high and had started toward the ladder with the evident purpose of descending, all tend to negative the idea that the step of the ladder was displaced by a kick or by appellee's body coming in contact therewith as he descended, but on the contrary, as stated, tends to show that appellee as he got upon the ladder, or soon thereafter, stepped upon or grasped the step which gave way because of its original insecure construction, or because it had, by reason of a failure to inspect, been allowed to become weakened and insufficient to support appellee's body.

Without reciting what it is, we fail to discover in the evidence any reasonable basis for the contention that appellee ratified the release of the damages executed by him at a time when the evidence shows he was undoubtedly of an uncomprehending mind. Nor do we find a suggestion in the evidence, as appellant urges, that it was appellee's duty to inspect the ladder from which he fell, or that in the performance of his duty such defects were obvious, or must necessarily have been discovered.

[7] There is a contention in several forms that there was no evidence of an impaired ability on appellee's part to earn money in the future, and hence that a special instruction to that effect should have been given, and that the court erred in permitting a consideration of this element in the measurement of the damages. But, in view of the small verdict that was rendered and of the evidence relating to the subject, we feel but little patience with the contention. The good faith of appellee's testimony that his recollection of the transaction had been destroyed by his fall was substantially admitted on the submission of the case before us. Chas. Boone testified:

That he did oil field work for the defendant, and had known the plaintiff for 7 or 8 months;

had social intercourse with him off and on before his injuries and since, and worked with him; that there was a difference in his mind; that before the plaintiff's injury "he seemed to be a very bright, ambitious young man, and since then he never seems to have the same ambition. * * * He seems to forget his work. He would leave his stops open, he would lose oil from the tanks."

Arvin Anderson testified:

"It seems to me that Dinwiddie's mind is impaired to a certain extent; that is my opinion, and my opinion is formed from my association with him. * * * He gets lost in what he is talking about. He cannot carry on a conversation now as he did before his fall. He is complaining of his hip and his head considerably."

C. D. Baker testified:

"I have seen Dinwiddie at work after he fell. He switched water at the time I noticed him, and he would tell you that a tank was open or closed and it was right to the contrary. Sometimes he was right and sometimes he was wrong. He was firing a boiler and I relieved him. I relieved him because I was instructed to do so."

The plaintiff himself testified:

"My head has never quit hurting me up until to-day. I have a dull ache right over my eyes seemingly. My head since the injury has felt thick-headed, feels dull, have a dull headache most all the time; I do not know it seems like it is hard for me to comprehend anything. I do not learn, and it is hard to understand anything with much meaning to it, and that condition exists now. That condition did not exist before I got hurt. I was 21 years old at the time of my injury on the 23d of January, 1913."

And it was agreed in open court that the plaintiff had a life expectancy of 40 years.

Dr. J. E. Daniels testified:

"I have examined his head. * * * I would consider it a permanent injury. It will affect his memory, cause inability to collect himself, quick or rapid, and lack of interest in things. * * * It is my opinion that Dinwiddie has a lacerated brain. * * * It would be a permanent injury. The probable results from a lacerated brain are the lowered vitality of the brain cells, subject to epilepsy, paralysis, and all of the diseases that go with an affected brain. * * * A man who has received injuries of this kind is more susceptible of disease."

The effect of this evidence is not destroyed by the fact that after appellee was able to leave the hospital the appellant company furnished him with employment (but of a different grade, as there is evidence to suggest) at substantially the same wages appellee had received before his injury. Appellee's impaired mentality, as shown by the evidence, according to all human experiences must necessarily result in an impairment of his earning capacity; at least the evidence is such as to authorize the court to submit an element of damages for the consideration of the jury.

[8] As introductory to the special issues the court in his charge, in general terms, defined the duty of the master to use ordinary care to furnish the plaintiff as its servant with reasonably safe appliances for the purpose for which they were to be used, and to exercise such care to keep such appliances in reasonbly safe condition. Also in general terms he defined the term "negligence," and gave the rule of law relating to the issue of assumed risk which had been pleaded by the appellant company; also the rules of law by which the jury should be governed in determining the issues relating to the release of damages pleaded by the appellant company. Error is assigned to these charges on the ground, substantially, that the charges indicated to the jury the effect of their special findings contrary to the real purpose and intention of the law. The precise point seems to have been presented in the case of T. & F. S. Ry. Co. v. Casey, 172 S. W. 729. It was urged by the appellant in that case:

"That by informing the jury that under a certain state of facts the plaintiff in the suit would recover a judgment, and that under a certain other state of facts she could not recover, the court thereby influenced the jury to find the facts which required a judgment in the plaintiff's favor."

In disposing of this contention the court, speaking through Justice Hodge, there said:

"This argument is based upon the assumption that the jury would take into consideration the character and conditions of the parties to the suit, and would be moved by a feeling of sympathy for the plaintiff. It may be that in controversies of this character such emotions do sometimes control the verdicts of juries; but, in the absence of some evidence to that effect, we cannot assume that such bias and sympathy existed. The mere finding of facts favorable to the plaintiff is not sufficient when the evidence is of that character which warranted such finding. To gratuitously assume that a jury which has been properly tested and selected yielded to such sympathy, or was probably controlled by such emotions under such conditions, is to impeach the system of trial by jury for being fundamentally unreliable. Where a general verdict is to be rendered, the jury are necessarily informed of what is required to be found in order to entitle either party to a judgment. Evidently the law does not contemplate that such information should be concealed from juries in order to insure absolute impartiality."

The statute hereinbefore cited (General Laws 1913, p. 113), among other things, further specifically prescribes that:

"In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

In appellant's proposition and statement under the assignment raising the question indicated no inaccuracy in the court's general instruction is pointed out, and we approve as applicable here what we have quoted from the opinion in the case of Railway v. Casey, supra.

[9] By several assignments, error is assigned to the action of the court in refusing to submit a number of special issues requested by appellant. We think it sufficient to say, without extending our opinion by a particular analysis of these several assignments, that the special issues submitted by the court sufficiently comprehended all of the material issues of the case, and we conclude that all assignments of error should be overruled, and the judgment affirmed.

Affirmed.