[Civ. No. 15463. Second Dist., Div. Two. Feb. 4, 1947.]

JEANNE MARSHALL, Respondent, v. W. PARKER LYON, JR., et al., Appellants.

Gibson, Dunn & Crutcher and Sidney A. Moss for Appellants.

Jennings & Belcher and Louis E. Kearney for Respondent.

McCOMB, J.—From a judgment in favor of plaintiff after trial before a jury in an action to recover damages for personal injuries received when plaintiff fell on a ramp appurtenant to a market operated by Gertmenian and owned by defendants Lyon, defendants appeal.

The facts are these:

Defendants Lyon owned a market building in the city of Monrovia of which their codefendant was the lessee and in which he operated a public market. The market building is located on the west side of Myrtle Avenue, a street lying north and south. The street sloped downhill from north to south at the point where the building is situated. The floor of the market is above the level of the sidewalk on the west

side of and paralleling Myrtle Avenue, and the descent from the floor to the sidewalk is made by means of a cement ramp. Due to the north to south grade of Myrtle Avenue the floor of the market at its northermost side is very slightly above the sidewalk while at the southermost side it is at least a foot and a half or possibly two feet above the sidewalk. At a position six feet north of the most southerly side of the building the market floor level is about-twelve and three-eighths inches above the sidewalk level. The length of the ramp from the floor of the market to the sidewalk is seven feet four inches. Thus at a point six feet north of the most southerly side of the building the slope of the ramp was twelve and three-eighths inches in seven feet four inches.

On November 21, 1944, plaintiff, after having purchased merchandise in the market, prepared to leave the store. At a point six feet north of the most southerly side of the building she stepped onto the ramp. As she placed her right foot on it she started to slide down and being unable to regain her balance, she fell and received serious personal injuries. It is conceded that there was no foreign substance on the ramp. It was constructed of more or less smooth cement.

There was received in evidence, over objection, portions of the Uniform Building Code adopted by the city of Monrovia as an ordinance and in effect at the time of the accident. The pertinent portions of such code received in evidence are as follows:

Section 1104: "Stairs and exits shall be provided as specified in Chapter 33."

Section 3301: "All exits as required for buildings in this code shall comply with the requirements specified in this chapter for a stairway, ramp or smokeproof tower. Wherever stairways are mentioned, ramps may be substituted when constructed as specified in section 3310."

Section 3305: "All stairways shall have walls or well secured balustrades or guards on each side and handrails shall be placed on at least one side of every stairway and for stairways exceeding 44 inches in width shall have handrails placed on each side. Stairways over seven feet wide shall be provided with one or more continuous intermediate handrails substantially supported and the number and position of intermediate handrails shall be such that there is not more than 66 inches between adjacent handrails. Handrails and railings

shall be placed 30 inches above the nosing of treads and ends of handrails shall be returned to the wall.''

Section 3310: ''Wherever stairways are required by this code, ramps with a slope not greater than one foot in eight may be substituted. Ramps shall comply with all the requirements for stairways as to construction, width, enclosures, landing, lighting and ventilation. Ramps shall be surfaced with an approved non-slip material. Handrails shall not be required where the slope of the ramp is less than one foot in ten feet.''

Section 3316: ''Outside stairways of the return platform or straight run type may be used as a required means of exit for buildings not exceeding five stories or 55 feet in height but in no case shall such stairways constitute more than 50 per cent of the required exit capacity. All outside stairways shall be located so as to lead directly to a street or alley or to a yard directly connected with a street or alley. The stairways, landings, platforms and balconies shall be constructed as specified for stairways in this chapter, except that they shall be of incombustible materials throughout; provided that stairways serving only the second floor may be constructed of combustible material.''

The foregoing provisions of the Uniform Building Code were embodied in instructions read to the jury.

Defendants rely for reversal of the judgment on the proposition that *the trial court committed prejudicial error in receiving in evidence the sections of the Uniform Building Code quoted above and in reading such sections to the jury.*

This proposition is untenable. ▉ In defendants' briefs they predicate certain arguments upon sections of the building code not received in evidence. Such arguments must be disregarded by us since the law is settled that appellate courts are not allowed to take judicial notice of city ordinances that have not been received in evidence in the trial court. (*City of Oakland* v. *Brock,* 8 Cal.2d 639, 641 [67 P.2d 344]; *Marysville Woolen Mills* v. *Smith,* 178 Cal. 786, 791 [175 P. 13]; *In re Wacholder,* 1 Cal.App.2d 254, 256 [36 P.2d 705].)

▉ Defendants also urge that the sections of the ordinance were improperly received in evidence for the reason that the aperture through which plaintiff was passing in leaving the market was not an ''*exit*'' but an ''*entrance*'' to the building and that the sections of the ordinance above referred to apply only to exits and not entrances to buildings. Hence

such ordinance is not pertinent to the facts in the present case.

Such argument is without merit. Webster's New International Dictionary, second edition [1939], volume 1, page 894, defines *"exit"* as "a way of departure; passage out of a place; egress." Clearly the ramp on which plaintiff was leaving the store falls within the above definition as a way of departure or passage out of a place. The fact that it might also be used as an entrance or way into the store would not destroy its character as an exit.

■ There is likewise no merit in defendants' contention that a ramp could be substituted only when a stairway was required by the ordinance. Section 3301 of the ordinance clearly provides that "all exits" for buildings "shall comply with the requirements specified in" the ordinance for a "ramp." It is apparent that the language of the section contemplates ramps in two categories: (1) Ramps constructed at an exit where a full "stairway" is not needed or required but where nevertheless a slope exists; and (2) ramps used in lieu of stairways required by various provisions of the ordinance. The word "ramp" is used in each sentence of the section; in the first sentence as a device on a par with stairways; in the second sentence as a permitted substitute for a stairway.

Since the ordinance was properly received in evidence the trial court was correct in reading to the jury the sections received in evidence together with other instructions. ■ The evidence that the slope of the ramp was twelve and three-eighths inches in a distance of seven feet four inches supports the jury's implied finding that defendants were negligent in not complying with the provisions of section 3310 of the ordinance requiring that ramps should not have a greater slope than one foot in eight feet. (Cf. *Clinkscales* v. *Carver,* 22 Cal. 2d 72, 75 [136 P.2d 777].)

No error appearing in the record the judgment is affirmed.

Moore, P. J., and Wilson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 31, 1947. Traynor, J., and Schauer, J., voted for a hearing.