**Delia Garcia SIMMS, Appellant,**

v.

**SOUTHWEST TEXAS METHODIST HOSPITAL et al., Appellees.**

**No. 15387.**

Court of Civil Appeals of Texas, San Antonio.

March 3, 1976.

Rehearing Denied April 7, 1976.

---

Hardberger, Branton & Herrera, Maverick & Tynan, San Antonio, for appellant.

Wiley, Plunkett, Gibson & Allen, Lewin Plunkett and Daniel Diaz, Jr., Thomas H. Sharp, Jr., Chester H. Brown, San Antonio, for appellees.

CADENA, Justice.

Plaintiff, Delia Garcia Simms, complains of a judgment, based on a jury verdict, denying her recovery for personal injuries which she alleged resulted from the presence of cornstarch on surgical gloves used by surgeons who operated on her for the purpose of removing an ovarian cyst.

Named as defendants in plaintiff's petition were Southwest Texas Methodist Hospital; William F. Pipes, M.D., and Everett M. Boyd, M.D., the surgeons who performed the operation; Pioneer Rubber Company, a division of Sherwood Medical Industries, Inc.; Pharmaseal Laboratories; American Hospital Supply Corporation; and Genetic Hospital Supply Company. Prior to entry of judgment plaintiff took a nonsuit as to the last three named defendants. In this Court plaintiff has abandoned her appeal insofar as Southwest Texas Methodist Hospital, William F. Pipes, M.D., and Everett M. Boyd, M.D., are concerned, so that the judgment, insofar as it denies plaintiff recovery against these three defendants, must be affirmed. This appeal, therefore, concerns only the liability of Pioneer Rubber Company, a division of Sherwood Medical Industries, Inc., who, in the course of this opinion, will be referred to as "defendant."

On May 5, 1970, plaintiff underwent surgery for the removal of an ovarian cyst, and was released from the hospital six days later. On May 14, 1970, plaintiff was readmitted to the hospital with symptoms of an obstruction of the bowel. Exploratory surgery revealed the presence of "extensive adhesions between the small bowel and pelvis and small bowell [sic] and anterior abdominal wall." This condition required the removal of ½ of the small intestine. As a result, plaintiff has little or no control of her bowels and has suffered, and will continue to suffer, extreme pain and mental anguish. It is not necessary, for the purpose of this opinion, to go into detail concerning the nature of plaintiff's problems.

Plaintiff's contention is that, during the first operation, corn starch powder present on the surgical gloves manufactured and supplied by defendant, was introduced into her abdominal cavity, producing a "starch granuloma" which necessitated the removal of a portion of her small intestine.

Surgical gloves are used by surgeons and those assisting them in performing operations for the purpose of preventing infection caused by the presence of bacteria and other infection-causing agents on the hands. For many years, talcum powder was applied to the gloves as a lubricant in order to make it easier for the surgeon and his assistants to don the gloves. The body is incapable of absorbing and eliminating talcum powder, and its introduction into the body during an operation caused serious problems in some individuals. For this reason, corn starch, which is more readily absorbable by the body, was substituted for talcum power as a lubricant on surgical gloves.

There is evidence that corn starch, when introduced into the abdominal cavity during an operation, can cause granuloma. Plaintiff contends that it was defendant's duty, as part of of its obligation to furnish a product which was not unreasonably dangerous, to warn of the danger of granuloma and to place on the package instructions concerning the best method for removing the starch from the outer surfaces of the gloves. At the time that plaintiff underwent surgery for the removal of the ovarian cyst, it was not defendant's practice to warn users of the gloves of the danger or to instruct them as to the most efficient method of removal of the powder. The persons who participated in the surgery donned the gloves and then washed their gloved hands in a "splash basin." The evidence shows that this method was ineffective, since the starch floated on top of the water in the basin and adhered to the gloves. In order to properly remove the starch, it is best to wash the gloved hands under running water and then wipe them with a damp sterile cloth.

Plaintiff asserts that defendant's failure to warn of the danger and to inform users of the gloves of the proper procedure to eliminate the danger rendered the gloves unreasonably dangerous. In her pleadings, plaintiff relied on theories of negligence, strict liability in tort, and breach of express and implied warranties. However, in this Court she relies only on breach of the implied warranty of merchantability, contending that defendant's failure to give the mentioned warning and instructions rendered the gloves unreasonably dangerous and, therefore, unfit for the ordinary purposes for which such gloves are used. Tex. Bus. and Com.Code Ann. § 2.314(b).

The jury, in answer to special issue 8, found that the absence of warning and instructions rendered the gloves unreasonably dangerous. However, in answer to special issue 9, which inquired if the jury found that "such dangerous condition was a producing cause of the plaintiff's injuries," the jury answered, "We do not." The trial court overruled plaintiff's motion that the court disregard the answer to issue 9 and render judgment in favor of plaintiff. Plaintiff's first 13 points complain of this ruling.

There is ample testimony to the effect that the adhesions which were the source of plaintiff's troubles were caused by the introduction of corn starch into her abdominal cavity during the first operation. Defendant's theory was that plaintiff's condi-

tion which necessitated removal of part of her small intestine was a "talc granuloma" which was the sole cause of her condition. According to defendant, during an earlier operation, when surgical gloves were treated with talc, talcum powder was introduced into plaintiff's body, and the adhesions were the result of the presence of the non-absorbable talc. The state of the testimony is accurately and tersely summarized by plaintiff in her brief, under the heading, "Who killed Cock Robin?" as follows: "The starch powder did it said the plaintiff's experts. The talc powder did it, said the defendants' experts."

It is, then, clear that the evidence did not establish as a matter of law that plaintiff's condition was caused by starch. Nor can it be said that the jury's negative answer to the causation issue is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. The sharp conflict in the evidence merely created an issue of fact which the jury resolved in favor of defendant.

Plaintiff's next contention supporting its argument that the trial court erred in not disregarding the jury's negative answer to special issue 9 (relating to causation) and rendering judgment for plaintiff requires a consideration of the jury's answers to special issues 10 and 10–A.

In answer to special issue 10, which inquired whether plaintiff's adhesions and obstruction of the bowel were the result of an "abreaction," the jury answered, "No." Special issue 10–A inquired whether the second operation (removal of part of small intestine) "was necessitated by a talc granuloma?" The jury answered this issue in the negative. It should be pointed out that these issues were framed in a manner which placed on defendant the burden of proving that the bowel obstruction and adhesions were the result of an abreaction (special issue 10), and that the second operation was made necessary by "talc granuloma." (Special issue 10–A.)

Plaintiff argues that, under the testimony, there were only three possible causes of

her condition: (1) abreaction, (2) talc granuloma, (3) starch granuloma. Plaintiff then insists that since the verdict eliminated two of the only three possible causes (abreaction, by its answer to special issue 10, and talc granuloma by its answer to special issue 10–A), it follows necessarily that plaintiff's injury resulted from starch granuloma.

This argument is without merit. In the first place, it misinterprets the jury's answers to issues 10 and 10–A. The "No" answer to the inquiry, "Do you find, from a preponderance of the evidence, that Delia Garcia Simms' obstruction of the bowel and adhesions discovered in the May 14, 1970, surgery was the result of an abreaction?" is not a finding that such condition was not the result of an abreaction. The negative answer is no more than a refusal by the jury to find from a preponderance of the evidence that plaintiff's condition was the result of an abreaction. *City of Beaumont v. Graham,* 441 S.W.2d 829, 835 (Tex.1969). As submitted, special issue 10 placed the burden of proving the fact of abreaction on defendant. Whether the trial court erroneously placed such burden on defendant is irrelevant. The negative answer, when related to the form in which the issue was submitted, merely means that defendant failed to persuade the jury of the existence of the fact of abreaction. *C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966).

The same is true of the jury's answer to special issue 10–A. This issue inquired whether the jury found from a preponderance of the evidence, that the second operation "was necessitated by a talc granuloma?" The answer, "We do not," is not a finding that the preponderance of the evidence established the fact that a talc granuloma was not the cause of the second operation.

The verdict, then, cannot be interpreted as embodying findings that plaintiff's problems were not the result of an abreaction or of talc granuloma.

In the second place, plaintiff's argument completely overlooks the fact that the

jury answered "We do not" to the inquiry, contained in special issue 9, whether the jury found, from a preponderance of the evidence, that the dangerous condition of the gloves was a producing cause of plaintiff's injuries. Whether plaintiff sought recovery because of negligence, breach of warranty, or a theory of strict liability in tort, the burden was on her to prove that her injury resulted from a defect in the product. 1 Hursh & Bailey, American Law of Products Liability § 1.29 (2d ed. 1974). Plaintiff simply failed to obtain the necessary affirmative response to special issue 9.

Plaintiff's argument to the effect that since the record discloses only three possible causes; i. e., talc granuloma, abreaction, or starch granuloma, the jury's failure to find that her condition was caused either by abreaction or talc granuloma conclusively establishes that it was the result of starch granuloma, could, with a single, although significant, change, be adapted to a defendant-oriented argument by pointing out that the jury's failure to attribute the necessary causative effect of starch granuloma and abreaction conclusively establishes that plaintiff's condition was caused by talc granuloma. Or, defendant could just as plausibly argue that the "elimination" of starch granuloma and talc granuloma as causes conclusively establishes that plaintiff's condition was the result of abreaction, the only other possibility.

The simple truth is that plaintiff's failure to obtain an affirmative answer to special issue 9 precludes her recovery without reference to the answers to special issues 10 and 10–A.

■ Plaintiff urges that there were no pleadings to support the submission of special issue 9. The contention is clearly unsound. Plaintiff had the burden of pleading and proving the causal connection between the defect in the product and her injury. That is, causation was an essential factual element of her cause of action. Defendant's general denial was sufficient to insure that the burden of persuasion remained on plaintiff. Further, defendant's pleading to the effect that plaintiff's injury was solely the result of a talc granuloma clearly constituted a denial of plaintiff's claim that the starch on the gloves was a cause of plaintiff's injury. The pleadings clearly raised the issue of causation, and as we have already pointed out, the evidence raised the issue. Since Rule 277, Tex.R. Civ.P., requires the submission of all issues raised by the pleadings and the evidence, we know of no theory which would have justified the failure to submit special issue 9. It cannot be argued that the causation issue was not a "controlling" issue "made by the written pleadings and the evidence . . . ." Rule 279 clearly required the submission of such issue.

■ We cannot agree with plaintiff's contention that special issue 9 is immaterial. We have no quarrel with plaintiff's assertion to the effect that there may be more than one producing cause of an injury. But this elementary rule in no way supports the conclusion that it was not necessary, in order for plaintiff to recover, that she obtain an affirmative finding that the defect in the gloves was a "concurring cause." It was not incumbent on her to establish that the defect was "*the* producing cause." But she had the burden of establishing that it was "a producing cause." *Clark v. Waggoner,* 452 S.W.2d 437, 439 (Tex.1970), relied on by plaintiff, clearly holds that it was plaintiff's burden to prove that the defect was "*a*" cause of her injury.

■ A jury's answer to a special issue may be disregarded only when it has no support in the evidence or when it is immaterial. *C. & R. Transport, Inc., v. Campbell, supra,* at 194. The negative answer to special issue 9 cannot be said to lack support in the evidence or, more properly stated, it cannot be said that the required causal connection was established as a matter of law. The causation issue is not immaterial in the sense that it should not have been submitted. Even if it be assumed that the answers to special issues 10 and 10–A are in fatal conflict with the answer to special issue 9, such conflict would not justify disregarding the answer to special issue 9. 4

McDonald, Texas Civil Practice § 17.31, p. 204 (1971 rev.).

The trial court did not err in refusing to disregard the answer to special issue 9. Plaintiff's points 1 through 13 are overruled.

Points 14 through 18 complain of the exclusion of evidence proffered by plaintiff.

In considering the evidentiary points, we must bear in mind that the jury found, in response to special issue 8, that the gloves, because of the absence of the warning and instructions concerning removal of the powder, were unreasonably dangerous, and that, in answer to special issue 10, the jury failed to find that plaintiff's condition was the result of an abreaction. The finding that the product was unreasonably dangerous must be interpreted in the light of the special instruction accompanying special issue 8 to the effect that (1) the manufacturer of surgical gloves must keep reasonably informed of scientific knowledge and discoveries "in its field"; (2) such manufacturer is under a duty to impart such knowledge to those who, without such information, would be unable to protect themselves from the dangerous propensities of the product; (3) if the manufacturer knows, or, by the application of "reasonable [sic] developed human skill and foresight," should have known that the product might cause harm to sensitive users, failure to warn of the dangers renders the product defective and not reasonably fit for its intended use; and (4) if the manufacturer knew, or should have known, that its product might be dangerous to only some persons, even though few in number as compared to the total number of users, it has a duty to warn of the danger.

█ Insofar as the excluded evidence tended to show (1) that the gloves, in the condition in which they were marketed, created an unreasonable risk of harm; (2) that defendant knew of such danger and was under a duty to warn potential users; and (3) that such duty to warn existed even though the product would cause harm only to a few users, if plaintiff knew, or should have known, of such danger to sensitive users, its exclusion was rendered harmless by the finding that the gloves were unreasonably dangerous. Insofar as the excluded testimony tended to show that plaintiff's injury was not the result of an unusual reaction resulting from plaintiff's unusual sensitivity to starch, the exclusion of such evidence was rendered harmless by the fact that the jury answered the "abreaction" issue favorably to plaintiff.

Therefore, the cases relied on by plaintiff, which do no more than hold that the excluded evidence would be admissible as tending to show that the product was unreasonably dangerous; that defendant is chargeable with knowledge of such danger and was under a duty to warn users of such danger; and that plaintiff's injury was not the result of her unusual sensitivity to corn starch, are considered irrelevant.

Plaintiff's complaint concerns the exclusion of (1) medical journals published subsequent to the time she underwent the operation for the removal of the cyst on May 5, 1970; (2) a letter or memorandum issued by Southwest Texas Methodist Hospital, where plaintiff underwent the operation, warning of the danger of starch and specifying the manner in which surgical gloves should be cleaned, written and published after plaintiff's operation; (3) the package in which defendant is currently encasing its surgical gloves, which now bears a warning of the danger and instructions for removing the starch from the gloves; and (4) a regulation adopted by the Federal Drug Administration, more than a year after plaintiff's operation, requiring that the packages in which such surgical gloves are enclosed have printed on them a warning and instructions for the removal of the starch before the gloves are used.

Plaintiff contends that such excluded items of evidence were admissible for the purpose of establishing producing cause and for impeachment purposes.

██ It is well settled that an expert witness may properly be cross-examined, for impeachment purposes, by reading to him excerpts from treatises, books and scientific journals and asking him whether he

agrees or disagrees with the statements contained in such writings. In Texas, even this use of such documents is limited to publications which the witness recognizes as authoritative. *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779 (1949). However, it is equally well settled that the statements contained in such writings are, nevertheless, hearsay and inadmissible as original evidence for the purpose of establishing the existence of the facts affirmed in such publications. 1 McCormick and Ray, Texas Law of Evidence § 790 (1956).

▮ Plaintiff's brief makes it clear that such writings were attempted to be introduced not only for impeachment purposes but also as proof that the starch powder was the cause of her injuries. Even if we assume that excerpts from such publications were properly admissible for impeachment purposes, since plaintiff sought the admission of such evidence for an impermissible purpose, the trial court's exclusionary ruling must be upheld. *O'Brien v. Hilburn,* 22 Tex. 616 (1858); *Singleton v. Carmichael,* 305 S.W.2d 379 (Tex.Civ.App.—Houston 1957, writ ref'd n. r. e.).

On January 31, 1973, more than 20 months after plaintiff's operation, the hospital issued a memorandum concerning the establishment of a "written policy for sterile gloving." This letter or memorandum warned that introduction of starch into an open wound might cause granuloma and contained instructions for the cleaning of surgical gloves prior to surgery.

▮ Plaintiff offered the written memorandum "against the hospital." Since plaintiff does not complain in this Court of that portion of the judgment absolving the hospital from liability, the error, if any, in excluding the evidence cannot be considered prejudicial from the viewpoint of plaintiff's claim against the supplier of the gloves.

The warning posted by the hospital in its operating room more than a year after the operation was offered in evidence for the purpose of impeaching the administrator of the hospital. This witness, in answer to the question, "You have posted regulations before in the operating rooms on gloves, before?" answered "No." He was then shown the warning and asked if it "wasn't something" he had posted in the operating rooms "regarding the cleaning of gloves." He replied that it was not. In answer to a question inquiring whether the warning "was never posted in your operating room," he answered, "Not May 5th, or before 1970, because that was not printed or published by the—," at which point the witness was interrupted by plaintiff's counsel. Plaintiff then tendered the warning as evidence for "The limited purpose of impeachment of a hostile and adverse witness, that they do not give any instructions to doctors, ever." The evidence was excluded.

The conclusion is inescapable that plaintiff was attempting to impeach the witness with reference to a matter which is entirely collateral to her cause of action against the supplier of the gloves, who is the only defendant who is a party to plaintiff's appeal.

▮ Some time after plaintiff's operation on May 5, 1970, defendant began placing the following on the packages in which its surgical gloves are enclosed: "CAUTION: After donning, remove powder by wiping gloves thoroughly with a sterile wet sponge, sterile wet towel or other effective method."

Evidence of safety or precautionary methods taken by a defendant after an accident or injury is almost universally excluded as evidence of negligence for reasons of policy. It is felt that the admission of such evidence would have the result of discouraging subsequent repairs or precautions. 2 McCormick and Ray, *op. cit.* § 1151, p. 43. It is true that such evidence may be admitted for other purposes, such as "rebutting evidence, to explain other evidence in the case, to show that the defect could have been remedied, to show the effect that an obstruction, which was afterward removed, had in causing the injury." *Id.*

The evidence establishes beyond dispute that the defect in the product (absence of the warning) could have been remedied easily and at little expense to defendant. There was, therefore, no dispute that the

defect could have been easily remedied. By their finding that the absence of the warning rendered the gloves unreasonably dangerous, the jury demonstrated a conviction that the elimination of the danger was feasible. Insofar as the evidence tended to show the feasibility of remedying the defect, the jury's findings of unreasonable danger renders the error, if any, in excluding the evidence, harmless.

Admission of evidence of subsequent precautionary or safety measures for the purpose of establishing causation would discourage the taking of remedial measures after the accident as effectively as will the reception of such evidence on the issue of negligence. It is true that in *Texas & N. O. R. Co. v. Anderson,* 61 S.W. 424 (Tex.Civ. App.—Galveston 1901, no writ), evidence of subsequent repairs was admitted for the purpose of showing that the condition remedied was the cause of plaintiff's injury. In that case plaintiff sought to recover damages to his land resulting from the overflow of water from defendant's ditch. Plaintiff was allowed to show that after an obstruction was removed from the ditch the water receded and no further injury resulted. The Court said that such evidence tended to prove that the obstruction was the cause of the overflow which caused plaintiff's injury. Under such circumstances, the result of the subsequent improvement bears an almost undeniable relationship to the question of causation. In such a case, it is the result of the subsequent repairs which is persuasive. That is, the mere making of the repairs is not received as an admission by the defendant that the defect caused the injury. In this case, plaintiff does not point to any evidence which tends to show that the placing of the warning on the glove package eliminated, or reduced to any extent, the incidence of starch granuloma.

■ The trial court refused to permit plaintiff to introduce into evidence a regulation promulgated by the Federal Drug Administration on May 25, 1971, slightly more than a year after plaintiff's injury, which in effect, required that packages containing surgical gloves which had been sprayed with starch bear a warning statement and instructions for removing the powder.

The only case cited by plaintiff concerning the admissibility of a rule adopted by a regulatory agency subsequent to the injury of which plaintiff complains is *Curtis v. District of Columbia,* 124 U.S.App.D.C. 241, 363 F.2d 973 (1966). In that case plaintiff was injured when he tripped over the hinge of a vault which protruded above the surface of a public sidewalk. It was held that evidence of a subsequently adopted building code regulation, requiring that such hinges be constructed so as to be flush with the pavement was admissible as evidence of negligence, since it constitutes a standard of care against which the jury could measure the defendant's conduct.

*Curtis* clearly did not involve the question of admissibility of a governmental regulation which defendant has violated, since the regulation there in question was not in force at the time of the accident. The same is true here. The actual holding in *Curtis,* therefore, is that a governmental regulation which defendant has not violated is nevertheless admissible as some evidence of the standard of care in a sufficiently analogous situation. There is some authority supporting this view. *Edmonds, Inc. v. Vojka,* 118 U.S.App.D.C. 109, 332 F.2d 309 (1964); *Marshall v. Lyon,* 77 Cal.App.2d 905, 177 P.2d 44 (1947); 2 Harper and James, Law of Torts § 17.6, p. 1006 (1956). However, the great weight of authority is to the contrary. *Mechler v. McMahon,* 184 Minn. 476, 239 N.W. 605 (1931); *Meadors v. Huffman,* 191 Okl. 204, 127 P.2d 806 (1942); *Garthe v. Ruppert,* 264 N.Y. 290, 190 N.E. 643 (1934); *Florentine v. Church of Our Lady of Mt. Carmel,* 340 F.2d 239 (2d Cir. 1965); 2 Wigmore, Evidence § 461, pp. 500–01 (3d ed. 1940). That is, the prevailing view is that provisions of a regulatory measure are inadmissible absent a showing of its application to the situation in question and a clear violation of the regulation. Even then, in jurisdictions where, as in Texas, the violation of the statute constitutes negligence per se, the statute itself is not introduced in evi-

dence. In Texas, the jury is merely asked if defendant engaged in the conduct which is violative of the statute, and the statute has the effect of dispensing with the necessity for inquiring whether such conduct constituted negligence.

It has been pointed out that, with reference to the issue of causation, evidence of subsequent precautionary measures at most merely indicates that the defendant now admits that the condition in question was capable of causing the injury. 2 McCormick and Ray, *op. cit.* § 1151, p. 43. This inference is, perhaps, justified when the defendant voluntarily decided to take the precautionary measure. But the inference is not justified when the decision concerning the wisdom or desirability of such precautionary measures is made by a person other than defendant.

We know of no case where it has been held that governmental regulations adopted subsequent to the injury in question have been held admissible as evidence of causation.

Plaintiff's points 14–18 are without merit. In view of our holding, it is unnecessary to ·discuss defendant's cross-points.

The judgment of the trial court is affirmed.